STEPHEN JENNINGS vs. DANIEL L. DEMMON.

Suffolk.   December 3, 4, 1906. — February 26, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Equity Pleading and Practice*, Appeal, Costs.   *Equity Jurisdiction*, To establish
   equitable mortgage.   *Frauds, Statute of.*   *Evidence*, Extrinsic affecting writings.

On an appeal from a decree in equity where all the evidence is reported and the
   evidence, which was in large part oral, is conflicting, the decision of the judge
   who heard the witnesses will not be set aside if there is evidence on which his
   finding is warranted.
In a suit in equity to establish an equitable mortgage the plaintiff may show by
   oral evidence that a deed absolute on its face was given as security and was
   intended as a mortgage, and there is nothing in the statute of frauds which
   prevents this.
On an appeal from a decree in equity ordering that the bill be dismissed without
   costs, this court in affirming the decree ordered that before such affirmation it
   be modified so as to include the costs of the appeal.

BILL IN EQUITY, substituted by amendment on March 8, 1906,
as of December 14, 1904, by the assignee by mesne conveyances
from Alfred A. Marcus to establish an equitable mortgage upon
certain real estate on Harvard Place in Boston, praying for an
account and for a redemption.

The bill alleged in substance that Marcus, having negotiated
with one Millis for the purchase of the real estate named, arranged
with the defendant to furnish the consideration and to take the
title in his own name by a deed absolute in form but in fact as
security for the amount of his advances upon terms which were
more fully set forth in an agreement in writing alleged to have
been entered into between Marcus and the defendant.   The an-
swer alleged in substance that the defendant purchased the prop-
erty in question in July, 1887, on his own account, and has since
held it free from all trust and obligations to Marcus, and set up
the statute of frauds, the statute of limitations and laches.

It was not controverted that on June 13, 1887, Millis, acting
for himself and others, the owners of the Harvard Place estate,
agreed in writing to convey to Alfred A. Marcus or order the
estate in question for $55,000 above a mortgage of $25,000, of
which $5,000 was to be paid upon delivery of the agreement

and the balance within twenty days from the date thereof.  Upon this agreement was indorsed the following :

" The foregoing agreement is hereby assigned, transferred, and set over for value received to Daniel L. Demmon, to whose order the deed shall be made and who shall hold this agreement and the deed under it as security for any money he may advance to secure the deed, and all such payments shall be endorsed thereon.

" Rec'd on above $5000.<br>
"     "     "     $5000.

" June 20, 1887.

" Alfred A. Marcus."

On June 28 this agreement was extended until July 20, 1887. This agreement passed into the custody of Demmon at the time of its assignment to him, and was kept by him after that time.

Under date of July 19, 1887, Millis and others, the owners of the property in question, conveyed it to Marcus, who, by deed dated July 20, 1887, conveyed it to the defendant.  In the making of these instruments and in the search of the title to the estate, one Baxter E. Perry, an attorney at law, acted as counsel for both the defendant and Marcus.  Demmon had no part in the transactions resulting in the sale from Millis to Marcus other than to pay the money.  The consideration for the conveyance was paid by the defendant by three checks dated respectively June 20, 1887, June 28, 1887, and July 20, 1887, all to the order of Perry and for the amounts respectively of $5,000, $5,000, and $45,000, which Perry turned over to Millis for the owners of the estate.  Marcus died before the filing of the bill.

In the Superior Court the case was heard upon documentary evidence and oral testimony.  The documentary evidence consisted of the agreement of June 13, 1887, and the assignment thereof to Demmon, various deeds affecting the title to the estate, including those from Millis to Marcus and Marcus to the defendant under date of July 19 and July 20, 1887, respectively, the checks of Demmon to Perry and a schedule of assets made by Marcus in insolvency proceedings in December, 1894, in which was this item, " Estate on Harvard Place, half interest, held by Daniel L. Demmon as collateral," and the depo-

sition of Baxter E. Perry, who at the time it was taken was seventy-eight years old and had been for several years in feeble health. He deposed in substance that he knew about the transaction in question, and that at the time he drafted an agreement in writing between Demmon and Marcus, which provided that the defendant was to advance about $65,000 for the purchase of the property, was to take the title as security for the advances and interest thereon at six per cent, and the sum of $1,500 as bonus, all in the nature of a mortgage which could be redeemed on payment of these sums within six months, and that, if Marcus did not redeem within that time, the defendant should hold the title as absolute and free and could sell at any time for any price he chose, but that the excess of price received over the amount due to Demmon and the further sum of $10,000 should be divided equally between Marcus and Demmon, and that the income over the carrying charges of the estate should be held by Demmon in equal shares for himself and Marcus, and that he collected the rents for the benefit of Marcus until the expiration of the time limited for redemption; that this agreement was executed in duplicate, one taken by the defendant and the other retained by the deponent for Marcus; that he missed the agreement within four or six months after its execution, although before its loss Marcus examined it several times, and that since then he had made diligent search for it many times and had been unable to find it.

Several witnesses testified orally that at different times Marcus had described to them the contents of the lost agreement between him and Demmon, one relating the substance of it to be that upon a sale of the property after the expiration of six months, Demmon and Marcus were to divide in equal shares the net profits arising from the land, and saying nothing about any bonus to Demmon; another testifying that if the sale was made within the six months Demmon was to get a bonus of $1,500 or $2,000, and that after the expiration of six months Demmon might take the property and sell it, and that when he did sell it there was to be an accounting in which all rents were to be credited after deducting expenses and interest on any money advanced by Demmon, together with a bonus of $10,000 to him, and the balance was to go to Marcus.

The defendant testified that he took the assignment of the option as security for the two payments of $5,000 each, which he advanced to Marcus, and that when July 20, 1887, came, Marcus owned up that he could not pay for the property, not having advanced a penny toward its purchase, and that thereupon the defendant paid the remaining $45,000 of the purchase price through Perry, thereby closing the transaction and acquiring for himself the absolute and unqualified title to the property, free from all obligation to Marcus.

The defendant's testimony, although not clear upon this point, appeared to assert that he began the collection of rents as soon as he received the deed of the property, and there was some corroboration of this from other sources. There was testimony showing that the reputation of Marcus for truth and veracity was bad.

The Superior Court on December 14, 1904, made an order appointing a commissioner to report the evidence to this court, and on January 1, 1906, after a hearing, made a final decree that the bill be dismissed without costs. The plaintiff appealed.

*W. C. Cogswell,* for the plaintiff.

*B. G. Davis,* (*H. S. MacPherson & E. F. Damon* with him,) for the defendant.

Rugg, J. This appeal brings before us the questions of fact as well as of law raised upon the trial in the Superior Court, and it becomes our duty to examine with care the evidence and determine the case according to our own judgment. But in reaching this determination, due weight is to be given to the decision of the trial judge and it is not to be set aside unless it appears to be clearly erroneous. Properly and necessarily, great consideration must be given to the conclusions of fact reached by the judge who hears the evidence, where it is in large part oral, for he has opportunities to pass upon the degree of credibility to be given to the testimony of the witnesses which no appellate tribunal possesses. In the present case, the trial judge made no memorandum of findings of fact or rulings of law, but simply ordered a decree to be entered dismissing the bill. The single question to be determined, therefore, is whether upon all the evidence this finding was plainly wrong.

If the evidence proves the allegations in the bill, the plain-

tiff is entitled to a decree in his favor, for a conveyance, although absolute in form, may be shown by oral proof to have been made in trust or by way of security.   There is nothing in the statute of frauds which prevents this result.   *Campbell* v. *Dearborn*, 109 Mass. 130.   It has not been contended in argument that the plaintiff's claim is barred by the statute of limitations.

The plaintiff has argued cogently that the evidence shows the execution and delivery of an agreement in writing, now lost, between Marcus and the defendant, providing that the conveyance to the latter was in trust for the benefit of Marcus, or in way of equitable mortgage.   There are many circumstances which support this contention, but they do not point so conclusively to this view as to demonstrate that the opposite conclusion cannot also be supported by certain aspects of the evidence.   If no such agreement was made, as was contended by the defendant, and the only contract between Marcus and the defendant was the one of June 13, 1887, and if this was terminated at its expiration by the absolute conveyance from Marcus to Demmon, then the plaintiff failed to make out his case.   There was testimony in support of all these propositions.   When these circumstances are considered in connection with the facts that after the loss of the copy of the alleged agreement belonging to Marcus in the possession of Perry, no effort was made by Marcus or Perry to procure the copy from Demmon or in any way to perpetuate the evidence of its existence and contents, and that it was not contended that anything had been said to Demmon about it during all these years, it cannot be said that a finding adverse to the plaintiff would not be fully warranted.

It would serve no useful purpose to review the evidence in detail and weigh the inferences on the one side and the other which might fairly be drawn from it.   The conclusion finally to be reached depends in large measure upon the degree of credibility to be attached to the testimony of the several witnesses. According to the decision of the Superior Court the influence to which it is entitled and upon a careful consideration of all the evidence, it does not appear that the plaintiff has sustained the burden of proving his case.   It is not necessary, therefore, to consider the question of laches.   The decree is to be so far modi-

fied as to include the costs of this appeal and as modified should be affirmed.. *Graves* v. *Hicks*, 191 Mass. 102.

*So ordered.*