## MARY MULLEN *vs.* ELIZABETH A. CLARK.

Suffolk.    March 17, 18, 1909. — June 24, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Equity Pleading and Practice*, Appeal.    *Way*, Private.

Upon an appeal from a decree dismissing a bill in equity to enjoin the owner of the house next to that of the plaintiff on the same street from obstructing an alleged passageway about four feet wide on the land of the defendant between the two houses, where the judge who heard the case filed a memorandum in which he stated that on all the evidence he found that the use made of the passageway by the owners and occupants of the plaintiff's premises had been permissive and not adverse, and found further that there had not been an uninterrupted use of the passageway for a period of twenty years before the bill was filed, and where also there was a direct conflict between the evidence for the plaintiff and that for the defendant, and the judge, who saw the witnesses and heard them testify, also took a view of the premises, which must have settled a disputed point in the testimony as to whether the plaintiff's son moved a certain fence over upon the defendant's land, which he denied, the decision of which must have gone a long way toward determining which story as a whole was to be believed, this court, after a full consideration of the whole evidence, *held*, that the finding of the trial judge that there had not been an uninterrupted use of the passageway for a period of twenty years should be affirmed, and did not find it necessary to consider the other findings made by the judge.

LORING, J.    This is a bill brought by the owner of a house numbered 20 Frederick Street, Boston, to enjoin the owner of the house numbered 18 Frederick Street from obstructing an alleged passageway three and three quarters feet wide, lying between the two houses.    It was alleged in the bill that the division line between the two estates ran through the centre of the so called passageway.    The evidence was taken by a commissioner, and the judge * took a view of the premises.    In the memorandum filed by the judge are the following findings of fact:

" The plaintiff contends that she has obtained by prescription an easement in the defendant's passageway.    It is agreed that there is no reference to any such easement in any deed and I find that there has been no open assertion by the plaintiff or any of her predecessors in title of a right to use this passageway.    It has in fact been used by her and by the occupants of her house for a number of years without objection and in the meantime

* *Fox*, J.

she has allowed her own strip of land to be encumbered by rubbish. But the defendant could not close the passageway without obstructing her only access from the street to her own back yard. There is no evidence that the plaintiff has ever made any repairs upon the passageway. The present case upon the facts falls well within the decision in *Kilburn* v. *Adams*, 7 Met. 33. Upon all the evidence I find that such use as has been made of this passageway by the owners and occupants of the plaintiff's premises has been permissive and not adverse. I find further that there has not been an uninterrupted use of the passageway for a period of twenty years before this bill was filed."

The case is here on an appeal from a final decree dismissing the bill with costs in accordance with the findings of the judge.

It appears from the evidence that there is no foundation for the claim put forward in the bill that the division line between the two estates runs through the centre of the so called passageway here in question, and that claim is now abandoned.

The land on the south side of Frederick Street, including the land in question, was divided into lots by a plan dated November 18, 1868, and soon after that date the two houses now owned by the plaintiff and by the defendant respectively were built by one Flynn, who became the owner of these lots of land in March, 1869. Each house was built on the easterly or southeasterly line of its lot. There was an open space three and three quarters feet wide between the westerly face of the defendant's house and the division line between the two, wholly on the defendant's land, which it is now claimed is a passageway and is the alleged passageway now in dispute. A similar open space some six feet in width was left between the westerly face of the plaintiff's house and the division line between that lot and the next lot to the west of it.

It was plain from the evidence that some use of this three and three quarters foot space had been made by the plaintiff and that in consequence thereof the defendant put a gate across it on the line of Frederick Street in July, 1905, and that he locked the gate. But the date when this use began and the circumstances under which it was exercised were matters on which there was a direct conflict in the evidence.

The plaintiff's son testified that being then fourteen or fifteen

years of age he attended the auction sale at which his father bought the house in 1876 now owned by the plaintiff, his mother; that the house was sold on the auctioneer's express statement that that house had a right to use this three and three quarters foot strip; and that the then owner of the defendant's house stood near by and heard that statement. In addition there was evidence that from that time to the putting up of the gate here complained of this three and three quarters foot strip had been continuously in use as the way to and from the back door of the plaintiff's house. It appeared that there was a back yard some six or eight feet deep back of each of the two houses. The plaintiff's evidence showed that persons going to and from the plaintiff's back door passed through a gate in the fence running from the rear of the plaintiff's house to the fence on the rear or southerly boundary line of her lot.

The defendant's evidence on the contrary showed that there never was a gate in this fence, but that at some period after July 31, 1890, the plaintiff's son took a board about fifteen inches wide out of this fence, hung it on a pair of leather hinges and made what the plaintiff's witnesses called a gate; and that until then there was no opening in the fence which ran from the near corner of the plaintiff's house on the easterly side line of her lot to the fence on the rear or southerly line of it.

There was therefore a direct conflict in the evidence. The judge who saw the witnesses and took a view of the premises was in a better position to decide where the truth lay than we are who have nothing but the record before us; and his conclusion should not be overturned unless plainly wrong. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 142. *Graves* v. *Hicks*, 191 Mass. 102. *Elliott* v. *Baker*, 194 Mass. 518. *Jennings* v. *Demmon*, 194 Mass. 108. *Quill* v. *Boston Ins. Co.* 197 Mass. 216. *Howe* v. *Howe*, 199 Mass. 598. Without going through them in detail, there were inconsistencies and other matters in the evidence introduced by the plaintiff which raise doubts as to its truthfulness and its accuracy.

There is one point however which is left by the evidence in a somewhat obscure condition, and which in our opinion is worthy of remark. The plaintiff undertook to prove that the real division line was the centre of the three and three quarters foot

space here in question. For that purpose he put on a civil engineer who testified that the fence on the easterly side of the plaintiff's yard "if extended to Frederick Street, would be nearly two and one-half feet northeast of the dividing line between lots 23 and 22." On cross-examination this witness testified "that this fence runs over on to the defendant's lot on the end nearest Frederick Street about one foot and two inches." This fence, it is to be remembered, was about six or eight feet long. The whole lot was thirty-five feet, and the house was from twenty-seven to twenty-nine feet, deep. All that this testimony therefore meant was that this fence on the easterly side line of the plaintiff's yard was not on a line parallel with the easterly side of the house, and being on a slant would be, if extended to Frederick Street, two and one half feet distant from the corner of the house on Frederick Street which by the deed was the corner of the lot. The defendant put on two witnesses who testified that they saw the plaintiff's son move this fence over on to the defendant's land in the latter part of the year 1890. In addition the defendant introduced evidence that the scarf or mortise where the southerly end of this fence was originally joined to the southerly division fence on the back of the yard was still visible, and was seven and one half inches west of the present point of junction between the two. The plaintiff's son admitted that he repaired the fence, but denied that he moved it over. The judge at the view must have settled which of these two stories was true, and that went a long way toward deciding which story as a whole was to be believed.

On a full consideration of the whole evidence we think that the finding that there had not been an uninterrupted use of the passageway for a period of twenty years should be affirmed. Under these circumstances it is not necessary to consider the other findings made in the Superior Court.

*Decree affirmed with costs.*

*M. J. Creed,* (*A. S. Graves* with him,) for the plaintiff.
*D. V. McIsaac,* for the defendant.