GEORGE A. BROWN *vs.* FRANCES J. HALLGREEN.
BARNETT ZEFF *vs.* FRANCES J. HALLGREEN & another.

Suffolk.   December 3, 1920. — January 11, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Contract,* What constitutes, In writing, Alteration. *Agency,* Scope of authority. *Equity Jurisdiction,* Specific performance.

A woman who owned certain real estate authorized a real estate agent to sell it for $5,000 and signed an agreement for sale, which was written by the agent and in which the name of a purchaser did not appear, and placed it in the agent's possession, the agreement containing the provisions that the selling price was $5,000 and that $200 should be paid when the agreement was signed by the purchaser. The owner instructed the agent that one who then was a tenant of the premises should have the first opportunity to buy the property at the price named. The agent notified the tenant that he could have the property at the

price named, but that he must decide at once as another person desired to pur-chase it. The tenant refused to decide at once. In the evening of the same day the agent told the tenant that the other person had not yet made his deposit and that if he did not do so before the next morning he, the agent, would tele-phone to the tenant. Later on the same evening the other person closed the bargain with the agent at $5,000, but made a deposit of $100 instead of $200, the agent accordingly changing the figures in the agreement as to the deposit and final payment and also making a slight change in the description of the premises to conform to the facts; and the purchaser signed the instrument. The tenant, being informed of the sale, saw the owner the next day before she had received the deposit, and, by representing to her that, not having received any of the purchase money, she was not bound by the agreement and by concealing from her the fact that the agent had followed her instructions and had offered the property to him, induced her to sign an agreement to sell the property to him and to receive from him a deposit of $500, and afterwards brought a suit in equity against her for specific performance of that agreement. The pur-chaser then brought a suit against the owner and the tenant, seeking specific performance of his agreement and also a decree that the tenant's agreement be declared void. The suits were heard together and the owner testified that the amount of cash deposit was a matter of indifference to her and that the whole matter was left to the agent to decide. *Held*, that

(1) A finding was warranted that the agent had authority to receive the smaller deposit from the purchaser and to change the agreement as he did;

(2) The agreement with the purchaser was binding, and a decree enforcing it was warranted;

(3) The agreement with the tenant was unenforceable and a decree declaring it void was warranted.

BILL IN EQUITY, filed in the Superior Court on November 20, 1919, for the specific performance by the defendant, Frances J. Hallgreen, of an agreement in writing for the sale and conveyance to the plaintiff of premises numbered 3 and 5 on Sturgis Street in Chelsea; also a

BILL IN EQUITY, begun by writ of attachment in the Superior Court dated December 1, 1919, against the same owner and against Brown, the plaintiff in the first suit, for specific perform-ance of an agreement in writing to sell and convey the same premises to the plaintiff and to have the agreement between the defendant Hallgreen and the defendant Brown declared null and void.

In the Superior Court the suits were heard together by *Lawton*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. The judge made the following findings:

"The two cases were tried together before me. The plaintiff, Zeff, went to a real estate agent, George I. M. Hayes, and said

he wanted to buy the property in question. On October 31, 1919, Hayes wrote to the owner, the defendant, Miss Hallgreen. On Monday, November 3, she came to Hayes' office and stated her price, $5,000. Zeff was notified of the price, and on Tuesday, November 4, went to Miss Hallgreen personally and tried unsuccessfully to induce her to reduce her price. He also went to the house to examine it, but was refused admittance. The house is a double house, in neither half of which does Miss Hallgreen live, one half of which has been occupied for many years by the plaintiff Brown, with his mother and sister, as tenant of Miss Hallgreen. Two or three years ago, he talked with her about purchasing the house, and asked her, if she ever decided to sell, to give him 'the first chance to buy.' She promised to do so.

"Wednesday, November 5, at 7 P.M. Brown went to Hayes' office. How he learned that the house was for sale, or why he did not go direct to Miss Hallgreen did not appear. He was told the price, discussed it, and asked Hayes, who had not seen the house, to go and examine it. Hayes agreed to do so on or before the following Sunday if the house was not sold before that time. He asked Hayes to promise to sell to him before he sold to any one else, and Hayes declined to do so.

"Thursday afternoon, December 7, [November 6] Hayes went to Miss Hallgreen. He told her of the two men who apparently desired to purchase, and she said that she desired Brown to have the first chance to buy if he were willing to pay her price. Hayes then wrote out the agreement for sale, . . . [which corresponded with that relied on by Zeff], with the following exceptions: The name of the purchaser was left blank. In the clause, 'a certain estate situated (No. 3 &) 5 Sturgis Street, Chelsea, and bounded as follows being a two family frame house and 5020 sq. ft. of land (situated 3 & 5 Sturgis St. Chelsea),' the words and figures in parentheses were not then written in, but were written later at Hayes' office. The amount paid down was originally written as $200 and the balance as $4,800. Miss Hallgreen testified that the amount to be paid down was a matter of indifference to her, and the amount of $200 was suggested by Hayes. Miss Hallgreen signed and delivered this to Hayes, and I find and rule that she intended to give and did give him full authority to deliver this agreement to either of the plaintiffs, and that he was by her fully authorized

to make such changes in the form of the agreement as he did thereafter make. Hayes got back to his office at 3.45 P.M. and immediately called up Brown on the telephone and told him in substance that he could have the house for $5,000, but that he must decide at once, as another person was after it. That, Brown refused to do. In the evening of the same day, Thursday, Brown telephoned to Hayes and Hayes told him that the other party had not yet made his deposit, and that if he did not do so before Friday morning he (Hayes) would telephone to Brown. Later, Thursday evening, Zeff came to Hayes' office and closed the bargain. He gave Hayes a cheque for $100, payable to Frances J. Hallgreen, signed by the firm name of the partnership of which he was a member, and signed the agreement which Miss Hallgreen had previously signed . . . , after Hayes had altered it by changing $200 to $100 and $4,800 to $4,900, and writing in the additions heretofore noted.

"On Friday morning, November 6, Brown telephoned to Hayes, and Hayes told him the property was sold. Friday evening, Brown went to Miss Hallgreen's house. In response to Brown's inquiries, she told him in substance that she had signed an agreement to sell, but had received no money. Brown told her in substance that unless she had received money there was no binding agreement to sell. Brown urged her to sell to him. She consented. He gave her a cheque for $500 to bind the bargain and she signed a receipt which Brown wrote and which was a sufficient agreement to sell. She did not know that Hayes had offered the property to Brown the previous afternoon, but understood or assumed that Hayes had disobeyed her instruction to give Brown the first chance.

"I make no finding of wilful fraud on the part of Brown, but I do find that the defendant was misled by, and relied on, his statement that she had not made a binding agreement, or authorized Hayes to make it, and that she was misled by his silence as to the fact that the property had been offered to him, Brown, the day before.

"On the foregoing facts, I find and rule that the plaintiff Brown is not entitled either to a decree for specific performance or. to damages. Subsequent actions by each plaintiff, with a view to fortifying his position, are immaterial.

"The defendant has been at all times ready and willing to make conveyance to whichever plaintiff was entitled to it."

By order of the judge a decree was entered in the first suit declaring the Brown agreement to be null and void and dismissing the bill; and, in the second suit, a decree was entered ordering a sale and conveyance to the plaintiff. Brown appealed from both decrees.

*C. A. Warren,* for Brown.

*D. P. Bailey,* for the defendant Hallgreen.

*S. B. Stein,* for the plaintiff Zeff.

CARROLL, J. These are two suits in equity for the specific performance of agreements to convey a certain tract of real estate. In the second suit, a decree was entered directing the owner, Miss Hallgreen, to execute within thirty days a deed conveying the estate to the plaintiff, Zeff. From this decree Brown appealed. In the first suit a decree was entered dismissing the bill, and the plaintiff appealed.

The main facts as found by the judge are these: On Thursday, November 6, 1919, one Hayes, a real estate agent, was authorized by the owner to sell the real estate for $5,000. An agreement to sell, in which the name of the purchaser did not appear, was written by Hayes, signed by the owner and delivered to him. Two hundred dollars was to be paid when the agreement was signed by the purchaser. Miss Hallgreen instructed Hayes that Brown, who then was a tenant of the premises, was to have the first chance to buy the property, provided he would pay the price. On the afternoon of November 6, Hayes notified Brown by telephone that he could have the property for $5,000, but must decide at once, as another person desired to purchase it. Brown refused to come to a decision at this time. In the evening of that day Hayes told Brown "that the other party had not yet made his deposit, and that if he did not do so before Friday morning he (Hayes) would telephone to Brown. Later, Thursday evening, Zeff came to Hayes' office and closed the bargain." Zeff at this time delivered to Hayes a check for $100, payable to Miss Hallgreen and signed by the firm of which Zeff was a member. Before the agreement was signed it was altered by Hayes by changing the amount of the initial payment from $200 to $100, and the amount to be paid on delivery of the deed from $4,800 to $4,900.

and by inserting a slight change in the description of the premises. The agreement was then signed by Zeff. On the next day Brown was informed by Hayes that the property was sold and on the same evening Miss Hallgreen told Brown that she had signed an agreement to sell, but had not as yet received any of the purchase money. Brown said to her in substance, that unless she had received this money she was not bound by the agreement. He urged her to sell the property to him and she finally assented and signed an agreement to this effect, he delivering to her his check for $500. She did not then know that Hayes had offered to sell the property to Brown, and assumed that he had neglected to follow her instructions to give Brown the first opportunity to buy it. She relied on Brown's statement that she was not bound by the agreement delivered to Hayes, and was also misled by his silence concerning the fact that an opportunity had been given him the day before to buy the property. The judge found that the amount of the initial payment was not considered important by the owner, and that the alterations in the written agreement were made with her authority. It also appeared that when the owner signed the agreement to convey to Brown she was ignorant that Zeff had signed the agreement to purchase. On the day following Miss Hallgreen received by mail Zeff's check. Brown saw her that day and told her to return the check, which she did, and she then signed an agreement of conveyance to Brown, which was prepared by him. The evidence was taken under the rule by a commissioner.

When Miss Hallgreen signed the agreement to sell the real estate to Brown, she was already under a binding obligation to convey to Zeff. Brown contends that the contract to convey to Zeff was not enforceable, because it was materially changed without her consent and delivered to Zeff without the payment of the specified cash deposit. Under the well recognized rule, the findings of the judge are to be sustained unless upon a careful examination of the evidence, we are convinced that he was wrong. *Jennings* v. *Demmon,* 194 Mass. 108. *Porter* v. *Howes,* 202 Mass. 54. The evidence shows that Miss Hallgreen admitted that the amount of the cash deposit made no difference to her; that if the agreement was signed by the purchaser, she did not care whether the deposit was $100 or $500; and that this whole matter was left to Hayes to decide. On this evidence there is nothing to indicate that the

judge was wrong in his conclusions. His findings were fully war-
ranted and they should not be set aside. Miss Hallgreen not
only gave Hayes authority to make such changes in the contract
as he thought proper, but the evidence showed that in the matter
of the initial payment, whether it was made in cash or by check
was left entirely to his judgment. The agreement between Zeff
and Hayes was therefore binding on the owner, and as her sub-
sequent agreement with Brown was made under a misapprehen-
sion, he cannot rely on his contract, based on the mistake for
which he alone was responsible, in order to prevent the execution
of the promise to convey the property to Zeff. See *Thaxter* v.
*Sprague*, 159 Mass. 397.

The finding of the judge must stand and the decree for the
plaintiff in the second suit is affirmed. The decree for the de-.
fendant in the first suit is affirmed with costs.

*So ordered.*