PHILIP RUBENSTEIN, trustee, *vs.* LOUIS LOTTOW.
SAME *vs.* WILLIAM SEDLIS.

Suffolk.  March 25, 1914. — January 20, 1915.

Present: RUGG, C. J., LORING, SHELDON, & CROSBY, JJ.

*Supreme Judicial Court,* Briefs. *Rules of Court. Equity Pleading and Practice,* Decree, Costs. *Bankruptcy,* Unlawful preference. *Partnership. Equity Jurisdiction,* Fraud, No relief from result of one's own wrongdoing. *Fraud. Wrongdoer without Remedy. Conspiracy.*

The provision of Rule 2 of the Supreme Judicial Court for the regulation of practice before the full court, that, "when the construction or effect of a statute

is drawn in question, so much thereof as is deemed necessary to the decision of the case shall be printed or written at length" in the briefs of the counsel, requires in a case where several sections of the bankruptcy act of 1898 are drawn in question the printing or writing in the briefs of the portions of the statute to be interpreted or applied.

The requirement of the same rule that "each party shall prepare a printed or written brief on paper of the usual quarto size" is not complied with by the presentation of a supplemental brief written on foolscap paper.

Where in a suit in equity in the Superior Court a decree is to be drawn, after a hearing of the parties and their witnesses, the decree should follow the form indicated by Equity Rule 37, and it should not be recited that the case was heard upon the "bill, . . . the answer thereto and the other pleadings," which would mean that there was no hearing on the facts.

Where two suits in equity brought by the same plaintiff against different defendants are tried together for the convenience of the court and the parties, but no order is made for the consolidation of the suits, a separate decree should be entered in each suit.

Where one of several claims of the plaintiff in a suit in equity has been disallowed, although the others have been established, it is proper in the decree either to order that the bill be dismissed so far as that claim is concerned or not to refer to it at all, instead of making an order that the plaintiff is not entitled to recover the amount of money covered by that claim.

Where costs are imposed in a suit in equity the amount of the costs that are to be paid should be stated in the decree.

A trustee in bankruptcy of the estate of a person, who was a member of a partnership until about two months before he was adjudicated a bankrupt, cannot maintain a suit in equity to recover the amount of an alleged unlawful preference where the transfer sought to be avoided was made by the partnership and not by the plaintiff's bankrupt individually, because the assets thus transferred could be recovered only for the creditors of the partnership.

In a suit in equity by the trustee in bankruptcy of a person, who was a member of a partnership until about two months before he was adjudicated a bankrupt, it was found by the trial judge that the bankrupt on the day of the dissolution of the partnership assigned to the defendant all the accounts receivable of the partnership, that at this time the bankrupt was insolvent, the partnership was insolvent and the defendant knew that both the bankrupt and the partnership were insolvent, and that the defendant then accepted the bankrupt as his debtor in place of the partnership, who owed him the money paid by the assignment of the accounts to him. At that time no other partnership creditor had accepted the bankrupt as his individual debtor. It appeared by the record that no attempt was made at the trial to go into the question whether the effect of the transfer of the accounts to the defendant would be to enable any one of the bankrupt's creditors to obtain a greater percentage of his debt than any other creditors of the same class, and no finding on this issue was made by the judge. *Held*, that so far as this issue was concerned the case should stand for further hearing and trial.

In a suit in equity by a trustee in bankruptcy to recover the amount of an alleged unlawful preference, where the plaintiff sought to recover a sum of money paid by the bankrupt to a third person with the alleged privity of the defendant, it was *said*, that under the provisions of the bankruptcy act of 1898 for the recovery by the creditors of preferences from the persons who received them, no case

had been found in which a third person had been held to be liable to repay the amount of an alleged unlawful preference merely because he was a privy to the payment; but in the present case it was unnecessary to decide this question, because the judge found on evidence that warranted such a finding that the defendant was not a privy to the alleged fraud.

The rule, that in a suit in equity a decision of the trial judge upon the facts will not be overturned unless plainly wrong, is not applicable where the findings of fact made by the judge show that he did not believe the witnesses on either side, so that his findings could not have been affected by the confidence that he reposed in the testimony of any of the witnesses that he saw and heard testify. In the present case, which was of this character, certain conclusions of fact made by the trial judge on the facts reported by him were found to be wrong.

In a suit in equity by a trustee in bankruptcy to recover the amount of an alleged unlawful preference by the assignment by the bankrupt to the defendant of certain accounts receivable, where it appears that the assignment of the accounts receivable was in part for the purpose of repaying to the defendant the amount of sums of money advanced by him for the purpose of enabling the bankrupt to continue in business for a sufficient length of time to prevent the trustee in bankruptcy, when appointed, from avoiding the assignment as a preference, this shows a fraud upon the law which entitles the trustee in bankruptcy to recover the amount of the assignment, in spite of the fact that the bankrupt may have received from the defendant the full value of the accounts assigned so that his estate was not diminished.

In such a suit, the defendant cannot be allowed to contend that, if the assignment to him of the accounts receivable thus is to be set aside as in fraud of the law, he is entitled to recover the sums of money paid by him to the bankrupt when the assignment was made; because where one has committed a fraud upon the law he has no standing in court but is left by the law without a remedy in the position in which he put himself.

One who conspired with a creditor of an insolvent person to assist such creditor to receive a preference unlawful under the bankruptcy act of 1898 is liable in a suit in equity brought by the trustee in bankruptcy of such insolvent for the amount of a sum of money collected by him which was a part of such unlawful preference.

LORING, J. The undisputed facts out of which these two suits in equity have arisen are in substance as follows.

In April, 1911, one Setlin, who theretofore had been a shipping clerk in the employ of an overall company on Hanover Street in Boston, set up in business for himself. To use his own words, the business consisted in "jobbing; children's dresses and muslin underwear." The defendant Lottow was an uncle of Setlin. His business was manufacturing "ladies' and children's dresses." He assisted his nephew Setlin in setting up in business; he sold him goods on credit and spoke a good word for him when Setlin referred persons to him. In July, 1911, Setlin took in as a partner one Smith, who was an uncle of Setlin and a brother-in-law

of Lottow.   When Setlin began in April, 1911, he put $300 into the business.   It appeared from an account of stock taken at the time he took Smith into partnership that he had $300 in the business at that time; Smith put $300 into the business, $75 of which was his own and $225 of which he borrowed from Lottow.   The name of the new firm was "S. & S. Manufacturing Company."

After January 1, 1912, at any rate, the business of the firm was not profitable.   The firm was indebted to Lottow in a considerable sum for goods sold to the firm.   On June 11, June 22, July 5 and July 25, the firm paid Lottow sums amounting to $893.20 on account of their indebtedness to him.   On July 30, 1912, the partnership was dissolved by Smith retiring from the firm.   To induce him to retire Setlin paid Smith $100 in cash and gave him his note or notes for $200 on Lottow's agreeing to take it or them on account of his (Smith's) indebtedness to him (Lottow).   All the partnership assets were assigned to Setlin, and Setlin agreed with Smith to pay all partnership debts.   At the same time Setlin assigned to Lottow substantially all of the book accounts due to the partnership, amounting to $1,673.25; he also gave to Lottow notes amounting in the aggregate to $500.   The two were equal in amount to the indebtedness theretofore due from the partnership to Lottow.   Thereafter Setlin undertook to carry on the business on his own account.   After June 1 Lottow sold no more goods to the firm or to Setlin, but he furnished Setlin with samples and after July 30 he filled orders taken by Setlin through the use of these samples, on Setlin's assigning to him (Lottow) the accounts due for such sale.   When Setlin took over the partnership assets he had some stock on hand, and thereafter he made some purchases.   Between July 30 and October 3, 1912, Lottow's clerk, Sedlis, advanced to Setlin $723.39, on receiving from Setlin book accounts amounting to $920.08, due for sales of goods made by Setlin after July 30, 1912.   These advances were made from time to time between July 30, 1912, and October 3, 1912.   Of these accounts receivable amounting to $920.08, the judge who heard the case found that Sedlis had collected $709.91, and that the balance of the accounts was of uncertain value.

On October 3, 1912, an involuntary petition in bankruptcy

was filed against Setlin. He subsequently was adjudicated a bankrupt, and the plaintiff, Rubenstein, was appointed trustee of his estate.

Later these two bills were brought by the trustee so appointed, one against Lottow and the other against his clerk Sedlis. The two bills in equity were tried together. The judge made findings of fact on February 27, 1913, and on July 24, 1913, a final decree was entered, a copy of which is set forth below.*

From this decree appeals were taken both by the plaintiff and by the defendants, and the case is here on the evidence taken by the commissioner when the case was heard in the Superior Court.

1. There are several matters of practice which should be dealt with at the outset. Neither brief complies with the second rule for the regulation of practice before the full court. That rule provides (*inter alia*) that: "When the construction or effect of a statute is drawn in question, so much thereof as is deemed necessary to the decision of the case shall be printed or written at length." In the case at bar several sections of the bankruptcy act of 1898 are drawn in question, and not one of them or any part of them, is printed or written in the brief filed by either party.

The same rule requires that briefs shall be printed or written on paper of the usual quarto size. The plaintiff's supplemental brief is written on foolscap paper. This is a matter of some consequence. The briefs are bound together with the record, and

---

* Final Decree.

"This cause came on to be heard upon the amended bill of complaint, the answer thereto and the other pleadings whereupon after hearing the parties and their witnesses it is ordered, adjudged and decreed that the respondent Louis Lottow be and he is hereby ordered to pay to the plaintiff the sum of $1,502.03, together with interest thereon from August 1, 1912, and the further sum of $75.00 together with interest thereon from October 1, 1912, and to transfer to the plaintiff the uncollected book accounts amounting to $171.22 being part of the book accounts transferred by Julius Setlin to said Lottow on July 30, 1912; that the plaintiff is not entitled to recover the further sum of $893.20 paid by the partnership of Setlin and Smith to Lottow prior to the dissolution of the partnership on July 30, 1912; that the plaintiff is not entitled to recover the amount of the book accounts transferred by Setlin to Wm. Sedlis between July 30, 1912 and October 3, 1912; or any part thereof; that costs be allowed to the plaintiff."

for that reason it is important that all should be on paper of the same size.

Other points of practice have to do with the final decree. The decree begins with a statement that the "cause came on to be heard upon the amended bill of complaint, the answer thereto and the other pleadings." But that statement is contradicted by the next sentence that "after hearing the parties and their witnesses it is ordered," etc. When a cause is heard on bill and answer the facts there alleged are admitted, as is the case where a cause is heard on demurrer. The decree should have begun with the statement that: "This case came on to be heard at this sitting and was argued by counsel; and thereupon, upon consideration thereof, it is ordered, adjudged and decreed," etc. See Equity Rule 37.

The last part of the decree appealed from is in these words: "That the plaintiff is not entitled to recover the amount of the book accounts transferred by Setlin to Wm. Sedlis between July 30, 1912 and October 3, 1912; or any part thereof; that costs be allowed to the plaintiff." If the two suits in equity (one against Lottow and the other against Sedlis) had been consolidated so as to make one cause a single decree would have had to be entered. In that case the proper way of dealing with the matter covered by the last clause of the decree (quoted above) would have been to dismiss the bill as against the defendant Sedlis. But there was no order of consolidation of these two suits. They appear to have been tried together merely, and that without a special order. They were not consolidated; as to the difference between trying two cases together and consolidating two cases, see *Lumiansky* v. *Tessier*, 213 Mass. 182. The two suits having been tried together merely, a separate decree should have been entered in each.

Again, in drawing a decree, if one of several claims is not allowed, the proper way of dealing with it is to dismiss the bill so far as that claim is concerned or not to refer to it in the decree at all. The provision in the decree "that the plaintiff is not entitled to recover the further sum of $893.20 paid by the partnership of Setlin and Smith to Lottow prior to the dissolution of the partnership on July 30, 1912," was improper.

Lastly, as was pointed out in *East Tennessee Land Co.* v.

*Leeson,* 185 Mass. 4, the amount of the costs which are to be paid should be stated in the decree. The proper form of a decree in equity for costs is: "The defendant or the plaintiff [as the case may be] is hereby directed to pay the defendant or the plaintiff [as the case may be] costs amounting to [naming the sum at which costs have been taxed before the decree is entered], and execution is to issue therefor."

2. The judge who heard the case found that when the payments amounting to $893.20 were made by the firm to Lottow on account of the firm's indebtedness, the partnership was insolvent, and that this was known to or should have been known by the defendant. But the judge ruled, as matter of law, that the trustee appointed in bankruptcy proceedings against Setlin individually could not recover a preference made by the partnership. We are of opinion that the ruling was right. The preference in question was an unlawful payment of assets which did not belong to Setlin (whose trustee in bankruptcy is undertaking to recover the sums so paid), but to Setlin and Smith jointly as partners. We are not able to see how the trustee in bankruptcy of Setlin's estate can recover back property of the firm which was transferred away by the firm as an unlawful preference. The plaintiff has argued that the question is governed by the decision made in *In re Keller,* 109 Fed. Rep. 118, to the effect that a creditor of a firm who seeks to prove against the individual assets of a bankrupt continuing partner must account for a preference received from the firm before he can prove against these individual assets. That decision went on the ground that the creditor was proving as an individual creditor of the continuing partner, and if he was allowed to keep the preference made by the partnership before the dissolution he would be enabled to obtain a larger share than other creditors of the same class. That decision does not reach this case. And that was in terms pointed out by the judge in that case, at p. 122. He there said: "The question is not the one that would arise in case the trustee of Almon D. Keller should sue a third party to recover back money paid him by the firm on a firm debt on the ground that such payment was a preference."

Another ground put forward by the plaintiff is that the continuing partner has succeeded to the rights of the firm and so has

succeeded to the right to recover this preference. But the right to recover back the preference is a right of the creditors of the firm, not a right of the firm. The other contentions of the plaintiff in this connection have been answered by what has been said.

3. The judge found as a fact that when Setlin on July 30, 1912, assigned to the defendant Lottow partnership accounts receivable amounting to $1,673.25, the partnership was insolvent, Setlin was insolvent, and the defendant knew that both the partnership and Setlin were insolvent. The judge found also that these accounts amounting to $1,673.25 were "substantially all of the book accounts due to the partnership." It further appears that with the notes amounting to $500 Lottow thus was paid in full for the debt due to him from the partnership. It further was found by the judge that Lottow then accepted Setlin as his debtor; and on the record it must be taken to be the fact that no other partnership creditor at that time had accepted Setlin as his individual debtor, except so far as Setlin's agreement with Smith to pay the partnership debts had the effect of creating a separate creditor of Setlin. Under these circumstances Lottow's counsel has contended that this does not make out a preference under the bankruptcy act of 1898, c. 541 (30 U. S. Sts. at Large, 544), as amended by U. S. St. 1903, c. 487, § 13. This contention is founded upon the provision of § 60 a, that to constitute a preference the transfer of property must be one which "will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditor of the same class." Lottow's argument is that he was the only individual creditor of Setlin at that time, except perhaps Smith, by reason of Setlin's promise to pay the partnership debts; that individual creditors of one partner are not creditors of the same class with partnership creditors of the firm; that Smith who cannot prove in competition with his own debtors is postponed in proof to the partnership creditors and so is in a separate class. For the proposition that partnership creditors are not of the same class as the separate creditors of the continuing partner the defendant Lottow relies on the following cases: *Miller* v. *New Orleans Acid & Fertilizer Co.* 211 U. S. 496, 504; *Matter of Read & Knight,* 7 Am. Bankr. Rep. 111; *Rogers* v. *American Halibut Co.* 216 Mass. 227; *Mills*

v. *J. H. Fisher & Co.* 159 Fed. Rep. 897.; *In re Wilcox,* 94 Fed. Rep. 84; *Euclid National Bank* v. *Union Trust & Deposit Co.* 149 Fed. Rep. 975; *In re Janes,* 133 Fed. Rep. 912; *S. C. sub nom. Mac-Nabb* v. *Bank of Le Roy,* 198 U. S. 583. It was stated in argument by counsel for the plaintiff that no attempt was made at the trial to go into the question whether the effect of the transfer of the accounts receivable amounting to $1,673.25 would be to enable any one of Setlin's creditors to obtain a greater percentage of his debt than any other creditors of the same class. It is apparent from the record that this issue of fact was not tried out at the hearing. No finding on that issue was made by the judge. Under the findings which were made by the judge, it may be that this issue will be decisive of the validity of this assignment. Under these circumstances we are of opinion that the case, so far as this claim of the plaintiff is concerned, should stand for further hearing and trial.

4. The plaintiff has contended that he is entitled to recover from Lottow the $100 paid by Setlin to Smith on the dissolution of the partnership. The ground of his contention is that it has been found by the judge that the firm was insolvent at that time. The plaintiff contends that the payment was a preference and that Lottow was a privy to this unlawful payment. The judge made this finding: "The evidence, however, did not warrant a finding of fact or ruling of law that Lottow was guilty of such fraud of creditors in the part he took in the transaction as to make him personally liable for the payment." We have found no case in which a third person has been held liable to repay the amount of an illegal preference because he was a privy to the payment. The statute provides that in such a case a recovery can be had from the creditor who receives the payment; U. S. St. 1898, c. 541, § 60 b; that is to say (in the case at bar) from Smith. But it is not necessary to consider what the law in that connection is, for the judge in effect has found that Lottow was not a privy to this fraud. Although on appeal the finding of the judge is open for correction, we do not think on the evidence that this finding of fact should be disturbed.

5. This brings us to a consideration of the claim of the plaintiff as to the accounts amounting to $920.08 assigned by Setlin to Sedlis from time to time between July 30, 1912, and October 3,

1912, on receiving from him sums amounting in the aggregate to $723.39. With respect to this the judge made the following finding of fact: "The plaintiff claims that the defendant Lottow should account to him for these book accounts on the ground that the amount advanced by Sedlis to Lottow for them was advanced by Sedlis in behalf of Lottow for the purpose of enabling Setlin to continue in business for more than four months after July 30, 1912, and in order to make the transfer of all his book accounts on that date to Lottow unassailable as a preference in bankruptcy. Sedlis was Lottow's manager. He also lent money on his own account. He never before had bought accounts. The transaction was not one which could have meant much profit, if any, to him. He received from Lottow at the times that he made payments to Setlin substantially the same amount that he paid Setlin for the book accounts. The evidence satisfied me that Sedlis's purchase of the book accounts was not a genuine business transaction, but that in purchasing them he was acting as Lottow's agent. Sedlis and Lottow both knew at the time that these book accounts were taken by Sedlis that Setlin was insolvent. The willingness of Lottow to advance these further sums, which amounted substantially to the amount of the book accounts, is consistent with his desire in good faith to help Setlin along and to keep him from bankruptcy. The evidence did not satisfy me that the amount was fraudulently advanced in order to keep Setlin from going into bankruptcy before the expiration of four months."

So far as this claim is concerned the defendant has rested upon the familiar doctrine that a decision in equity upon the facts, whether by a judge or a master, will not be overturned unless plainly wrong when it is called in question by a court which has a right to review the finding; as to which see (*inter alia*) *Sawyer* v. *Clark*, 214 Mass. 124, 126; *Campbell* v. *Lima*, 212 Mass. 11; *Flagg* v. *Phillips*, 201 Mass. 216; *Blossom* v. *Negus*, 182 Mass. 515; *Chase* v. *Hubbard*, 153 Mass. 91.

The foundation of that rule is that where a question of fact depends upon the credit to be given to testimony (including the credibility to be given to the several witnesses), a judge who has seen the witnesses and heard the testimony is better able to come to the correct conclusion than the court which is called upon

to review the finding on reading the testimony in print. See *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138. If the finding here in question had been in accordance with testimony given by a witness or by witnesses and so was founded upon credit given by the judge to the witness or witnesses whom he had seen, the rule would have been applicable in its full force. But the peculiarity of this case is that the judge did not believe the testimony of any one of the material witnesses who testified on this point. Setlin, called as a witness by the plaintiff, testified directly to conversations between him and Lottow in which it was stated that the purpose of this advance of $723.39 made by Sedlis to him (on his assigning to Sedlis the accounts amounting in the aggregate to $920.08) was to enable him to continue in business until the four months had expired during which the preference or preferences made to Lottow could be avoided. Manifestly the judge did not believe that Setlin was a credible witness. Lottow testified that this advance was made by his clerk Sedlis against his protest and not out of his (Lottow's) money; and Sedlis testified to the same effect. But this testimony was not believed by the judge. He found on the contrary that "he [Sedlis] received from Lottow at the times that he made payments to Setlin substantially the same amount that he paid Setlin for the book accounts," and that "Sedlis' purchase of the book accounts was not a genuine business transaction, but that in purchasing them he was acting as Lottow's agent." It is manifest, therefore, that the judge did not believe either Lottow or Sedlis. This finding therefore does not come within the familiar rule relied upon by the defendant.

The question which we have to decide in reviewing on appeal this finding of fact is this: What inferences ought to be drawn, on all the circumstances of the case as disclosed in the evidence, assuming that neither Setlin, Lottow nor Sedlis were credible witnesses? What were the facts? It appeared that the dissolution of the partnership and the assignment of the partnership assets to Setlin, who undertook to go on in business alone, was an act which Lottow had (in the words of the judge) "persuaded" Setlin and Smith to perform. On the evidence the judge well might have made a stronger finding in this connection. Taking the story as disclosed in the evidence it well might have been found that

Lottow was the controlling force throughout, and that Setlin and Smith were little, if any, more than his puppets. But we proceed on the findings made by the judge.

It is to be remembered that during the months of June and July Lottow had received from the partnership what on the finding of the judge could have been avoided as unlawful preferences to the amount of $893.20 had proceedings against the partnership been taken within four months; that as part of the dissolution of the partnership and the assignment by Smith to Setlin of all the partnership assets, Lottow received what might have been a further unlawful preference by the assignment of the partnership accounts receivable, amounting to $1,673.25. By the payments by the firm amounting to $893.20, and by the assignment by Setlin of the book accounts amounting to $1,673.25, and by Setlin's notes amounting to $500, Lottow had been paid in full. It is also to be borne in mind that at this time and during the previous months when the $893.20 were assigned to Lottow, the partnership was insolvent and was known by Lottow to be insolvent. It is likewise to be borne in mind that after June 1, 1912, Lottow had refused to sell any more goods to the firm or later to Setlin; that (under the findings of the judge) Lottow, through his clerk Sedlis, from time to time advanced to Setlin sums amounting in the whole to $723.39 on the assignment by Setlin of the book accounts which were the result of Setlin's sales after the partnership was dissolved; and that these accounts, amounting to $920.08, were all or substantially all the accounts receivable resulting from Setlin's business after the partnership was dissolved. It is apparent that Lottow had at stake what were or might have been unlawful preferences amounting to $2,566.45. He also had $500 of Setlin's notes, which it was for his interest to have paid. Lottow admitted on the stand that he knew about the four months' rule in bankruptcy and that he was familiar with such matters; in addition to this (under the findings of the judge) Lottow and Sedlis lied on the stand as to who really made this advance of $723.39 on the assignment to Sedlis of the subsequent accounts. The question arises why, if the transaction was as the judge found it to be (a "desire in good faith to help Setlin along and keep him from bankruptcy"), Lottow and Sedlis lied about the transaction

when on the witness stand. There would seem to be but one possible reason for Lottow and Sedlis lying about the character of these advances, and that was because they knew that if the truth about them were told they would be shown to be transactions which Lottow could not defend in court. The only apparent ground on which the advances could not be defended was because they were made to prevent these possibly illegal preferences to Lottow, amounting to $2,566.45, from being avoided.

Under the findings made by the judge in the light of the other evidence in the case, we are of opinion that the conclusion reached by him was wrong; that the only fair inference to be made is that the purpose for which the $723.39 was advanced by Lottow (through Sedlis) out of Lottow's money was to keep Setlin from going into bankruptcy before the expiration of four months from the time when the two unlawful preferences were made to Lottow.

The defendant has contended that on the finding of the judge as to the assignment of the accounts receivable, amounting to $920.08, the plaintiff failed to make out either a preference or a fraudulent transfer to hinder and delay creditors. His contention is that no preference was made out because full value was handed to the bankrupt when the assignment was made and so there was no diminution in the bankrupt's estate. So far as a fraudulent transfer to hinder and delay creditors is concerned, he relies upon the cases of *Githens* v. *Shiffler*, 7 Am. Bankr. Rep. 453, *Coder* v. *Arts*, 213 U. S. 223, 241, and *Matter of Maher*, 16 Am. Bankr. Rep. 340.

But we have not undertaken to hold the defendant for the assignment of these accounts receivable, either on the ground of a preference or on the ground of a fraudulent transfer made to hinder and delay creditors. The ground on which in our opinion the plaintiff has made out a case with respect to these accounts receivable is that the defendant advanced money for the purpose of enabling Setlin, the bankrupt, to continue in business for a sufficient length of time to prevent the trustee in bankruptcy, when appointed, from avoiding the transfer as a preference. That was a fraud upon the law. We are of opinion that property assigned by the bankrupt to the defendant for the purpose of carrying into effect that fraud can be recovered back by the trustee

in bankruptcy, who would have become entitled to this property had it not been transferred to this defendant to carry out that fraud.  For cases in other connections somewhat analogous in legal principle, see *Lantin* v. *Goodnow,* 207 Mass. 291; *Boston* v. *Simmons,* 150 Mass. 461; and *Graves* v. *Johnson,* 156 Mass. 211.

The defendant further has contended that if this fraudulent transfer is to be set aside he is entitled to recover back the sums paid by the defendant to the bankrupt when the assignment of these accounts receivable was made, on the ground that when a conveyance of property procured by fraud is rescinded, the plaintiff must return the consideration which he received for the fraudulent conveyance.  It is settled that that rule does not apply in the case of a fraudulent conveyance made to hinder and delay creditors.  *Holland* v. *Cruft,* 20 Pick. 321.  *Lamb* v. *McIntire,* 183 Mass. 367.  20 Cyc. 638.  It is also settled that that rule does not apply in an action to recover money or property transferred by way of a preference.  *Denny* v. *Dana,* 2 Cush. 160.  *Allen* v. *French,* 180 Mass. 487.  *Bolster* v. *Graves,* 189 Mass. 301. *Jaquith* v. *Davenport,* 191 Mass. 415.  *Jaquith* v. *Morrill,* 204 Mass. 181.

The ground on which the defendant is held liable in the case at bar is that he has committed a fraud upon the law.  Where one has committed a fraud upon the law, he has no standing in court, but is left by the law without remedy in the position in which he has put himself.  The latest application of that rule was in *Ewald* v. *Ewald,* 219 Mass. 111.  There a woman had left the Commonwealth to go through a ceremony of marriage in fraud of Massachusetts laws.  It was held that she could not maintain a libel for nullity of the marriage because she was asking for relief based on her own fraud.  That principle applies in this case and is decisive against the defendant's having a lien upon these accounts for restitution of the sum advanced by him to the bankrupt to commit this fraud upon the law.

It is plain on the evidence that Sedlis conspired with Lottow to commit this fraud on the bankruptcy act.  It follows that the plaintiff is entitled to recover from Sedlis (see in this connection *Boston* v. *Simmons, ubi supra*), as well as from Lottow these accounts amounting to $920.08.

According to Sedlis's testimony, he collected on these ac-

counts $597.69; there is uncollected $271.45; and he allowed in discounts in making his collections $50.94. On the record as it stands we do not think that Sedlis is entitled to these discounts amounting to $50.94. The amount that the plaintiff, therefore, is entitled to recover from both defendants is $648.63 with interest, and he is entitled to have the accounts, amounting to $271.45, or any collections which have been made on these accounts since the date of the hearing, assigned to the plaintiff. The plaintiff is entitled to interest on the several sums collected by Sedlis from the time that they were received.

6. In the decree appealed from, Lottow was directed to pay to the plaintiff $75 with interest from October 1, 1912. That sum however was included in the advances made by Sedlis on receiving the assignment of the accounts amounting to $920.08, which the judge found the plaintiff was not entitled to recover. As we have held that the plaintiff can recover these accounts, he is not entitled to recover this sum.

Let the decree appealed from be vacated. Let a decree be entered in the suit brought against Lottow directing that so far as the claim of the plaintiff to recover the accounts receivable amounting to $1,673.25 is concerned the case is to stand for further hearing and trial. And let an order be entered that the final decree, when entered, shall (1) direct the bill to stand dismissed so far as the following claims of the bill are concerned, viz.: (a) the claim to recover the sum of $893.20 paid by the partnership to Lottow prior to the dissolution of the partnership on July 30, 1912; and (b) the claim to recover the $100 paid to Smith at the time the partnership was dissolved; and (2) shall direct the defendant Lottow to pay to the plaintiff the sum of $648.63 ($597.69+$50.94), and to assign to the plaintiff the uncollected book accounts amounting to $271.45 (originally a part of the book accounts amounting to $920.08 assigned to him by Setlin), or so much thereof as are then uncollected, and to pay to the plaintiff any sums collected thereon since the hearing in the Superior Court, with interest from the time or times said sum of $648.63 and said sums collected since the hearing in the Superior Court were received, said time or times to be fixed by the Superior Court. The costs in this suit are left to be dealt with when the final decree is entered.

In the second suit a decree is to be entered directing the defendant Sedlis to pay to the plaintiff the sum of $648.63, and to assign to the plaintiff the uncollected book accounts amounting to $271.45 (being part of the book accounts amounting to $920.08 assigned to Sedlis by Setlin), or so much thereof as are then uncollected; and to pay to the plaintiff any sums collected thereon since the hearing in the Superior Court, with interest from the time or times said sum of $648.63 and said sums collected since the hearing in the Superior Court were received, said time or times to be fixed by the Superior Court; and to pay to the plaintiff his costs (naming the sum at which they are hereafter taxed); and that execution is to issue for all said sums.  It is

*So ordered.*

The cases were submitted on briefs.

Mr. Justice Sheldon took part in this decision, the opinion having been adopted by the court on December 28, 1914, in a form which remained unchanged, although the wording of the rescripts was changed later, the final rescripts having been filed on January 20, 1915, after the resignation of Mr. Justice Sheldon.

*D. A. Ellis & P. Rubenstein,* for the plaintiff.
*Lee M. Friedman & S. J. Freedman,* for the defendants.