PHILIP RUBENSTEIN, trustee in bankruptcy, *vs.* LOUIS LOTTOW.

Suffolk.    January 11, 1916. — March 3, 1916.

Present: RUGG, C. J., BRALEY, CROSBY, & PIERCE, JJ.

*Bankruptcy,* Unlawful preference. *Fraud. Wrongdoer without Remedy.*

In determining whether a bankrupt was insolvent at the time of making an alleged unlawful preference, it is right in computing the bankrupt's assets and liabilities to add to the personal debts of the bankrupt the debts of a partnership of which he was a member and for the debts of which he was liable jointly with a partner besides individually because he had agreed to pay the debts of the partnership on its dissolution.

Under the provision of § 60 a of the bankruptcy act of 1898 as amended, that "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, . . . made a transfer of any of his property, and the effect of the enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class," the effect of the enforcement of the transfer referred to is the effect it will have at the time the petition in bankruptcy is filed.

The provision of § 60 b of the bankruptcy act of 1898 as amended, that if a person to whom a transfer defined as a preference is made "shall then have reasonable cause to believe that the enforcement of such . . . transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person," means that a transfer is voidable if the person to whom it was made had reasonable cause to believe that the transfer would result in a preference if enforced at the time of bankruptcy.

Under § 60 b, above named, mere ground for suspicion is not "reasonable cause to believe."

Under that section it was *held* that a defendant to whom a preference was made had reasonable ground to believe that a certain transfer would result in a preference, where, among other facts, it appeared that the defendant was the uncle of the bankrupt, had aided him in his business ventures, had made frequent examinations of his books of account, had advanced money to him on an assignment of accounts immediately preceding the bankruptcy, and in general had been intimately familiar with the bankrupt's commercial standing.

The decision of this court at a previous stage of this case reported in 220 Mass. 156, to the effect that, where a creditor, who had secured from his insolvent debtor a transfer of property, the enforcement of which would result in a preference, surreptitiously had advanced sums of money to such insolvent debtor in return for assignments of accounts, for the express purpose of tiding the insolvent debtor

over the period of four months necessary to protect the preference from avoidance under the bankruptcy act, which purpose failed by reason of the filing of a petition in bankruptcy within the four months, the trustee in bankruptcy in a suit in equity against such creditor can recover the value of the accounts thus assigned without returning the money received'for such accounts by the bankrupt, here was affirmed on the ground previously taken that the acts of the creditor were a fraud upon the law, because the accounts were assigned and the money was paid for them in an unlawful attempt to circumvent the bankruptcy act.

RUGG, C. J. This case was considered in 220 Mass. 156, where the facts as they then appeared are stated at length. In accordance with the rescript there ordered, a new trial has been had upon certain issues. The facts now disclosed, new or different from those there set forth and material to the present decision, will be adverted to, so far as necessary. Several questions are presented.

1. Were the book accounts assigned to the defendant the property at that time of Setlin, the bankrupt, or of the firm of Setlin and Smith, of which he was a member? The trial judge,* after a hearing at which the various persons who knew the facts have testified orally before him, has found that these accounts were the property of Setlin. Under the familiar rule, that a finding will not be disturbed unless plainly wrong, although it is the duty of this court to examine the printed evidence and decide the case according to its judgment, giving due weight to the conclusions of the magistrate who saw the witnesses. A careful examination of the record convinces us that this finding ought to stand. It is not necessary, however, to analyze or to recapitulate the testimony. *Jennings* v. *Demmon,* 194 Mass. 108. *Sawyer* v. *Clark,* 214 Mass. 124. *Rubenstein* v. *Lottow,* 220 Mass. 156, at page 165.

2. The second question is, whether Setlin was insolvent at the time of the assignment of these book accounts. The trial judge found that he was. This finding is assailed on the ground that in making the account of Setlin's assets and liabilities, the debts of the partnership of Setlin and Smith, of which Setlin was a member, for the debts of which he of course was liable jointly with his partner, and whose debts on its dissolution he had agreed to pay, were added to Setlin's personal debts. In this there was no error of law. It was the correct way to ascertain the entire indebtedness of Setlin. *Francis* v. *McNeal,* 228 U. S. 695, 700.

---

* *Morton,* J.

3. The third question is, whether the effect of the transfer of these book accounts to the defendant "will be to enable" him to obtain a greater percentage of his debt than other creditors of the same class.

It was held, when the case was here before, that individual creditors and partnership creditors were not of the same class. Following and applying that decision, the trial judge found that "If the effect of the enforcement of the transfer to Lottow be determined as of July 30, I find that Lottow would not obtain a greater percentage of his debt than other creditors of the same class. If the said effect is to be determined as of October 3, I find that it would be to enable Lottow to obtain much greater percentage." An examination of the evidence discloses no reason why this finding of fact should be overturned. The question of law which arises in the light of these facts is whether in bankruptcy the preferential character of a transfer of property is to be determined as of the date of the transfer, July 30, 1912, or as of the date of the filing of the petition in bankruptcy, October 3, 1912.

We are of opinion that the judge ruled rightly that the decisive date was that of filing the petition.*

As a matter of verbal construction, the governing section of the bankruptcy act leads to this conclusion. The pertinent words of the bankruptcy act are in a footnote.† They express futurity. Whether "the effect of the enforcement" of the transfer *"will be to enable"* one creditor to get a larger percentage of his debt than other like creditors, by implication reaches forward to a time

---

* The ruling and finding of *Morton*, J., were as follows: "I rule as matter of law that the effect of the enforcement of said transfer is to be determined as of October 3. I further rule and find that the effect of its enforcement, will be, to enable Lottow to obtain a greater percentage of his debt than any other of Setlin's creditors of the same class. Said transfer then operated as a preference, and Lottow on July 30, 1912, knew or had reasonable cause to believe that this transfer did, and the enforcement thereof would, effect such a preference on October 3, 1912."

† U. S. St. 1898, c. 541 (30 U. S. Sts. at Large, 544), as amended, (32 U. S. Sts. at Large, 797, 34 U. S. Sts. at Large, 267, 36 U. S. Sts. at Large, 838,) " Sec. 60. Preferred Creditors.— a A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, . . . made a transfer of any of his property, and the effect of the enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

when an authoritative distribution can be made. Not until then can the respective percentages be determined with conclusiveness. If the time of the transfer had been the crucial time, the word "enables" naturally would have been used instead of the words "will be to enable" found in the act. The words "effect of the enforcement of such . . . transfer" also import adjudicated bankruptcy rather than the time of transfer. There can be no occasion for an "enforcement of such . . . transfer" until a petition in bankruptcy. A transfer of property by a debtor to his creditor apart from statute takes effect and is enforced automatically at once. There is no fraud at common law about such transfer not exceeding in value the amount of the debt, even though a preference of one creditor over another is thereby produced. *Lyon* v. *Wallace*, 221 Mass. 351. It needs no procedure to enforce it, but becomes enforced by the mere transfer. A question touching its enforcement does not arise until adjudicated bankruptcy intervenes. "The effect" of the enforcement cannot be settled until then. It seems indubitably to follow that its effect must be decided upon conditions as they then exist. The words "creditors of the same class" betoken adjudicated bankruptcy as the time for the application of the test. These words have no meaning except in connection with administration in bankruptcy. There are no classes of creditors at common law outside the bankruptcy act.

The bankruptcy court necessarily decides what the percentage then due to other creditors of all classes will be. That is one of the essential steps in its procedure. It would seem a strange anomaly to compel that court to try and decide another question of percentages relating to another time. If the defendant's contention is sound, the bankruptcy court well might be required, in the case of successive preferences, to enter into prolonged investigations as to the precise ratio to each other of the bankrupt's debts and liabilities at numerous different dates within the four months' period preceding the filing of the petition. Such judicial investigations inevitably would cause expense to the public and to the trustee representing the other creditors, and could confer no advantage on the debtor. They could benefit no one except a creditor who had accepted a preference, having reasonable cause to believe that he thereby was securing a preference from a bankrupt debtor. It cannot be presumed that such extreme solicitude at such

cost would be manifested by the law for such a creditor, in the absence of words expressing an unmistakable purpose to that end. The words of the act disclose no such design. On the contrary, they tend in the opposite direction.

The interpretation urged would result in inequality of distribution of the debtor's assets among his creditors. Equality of distribution is one of the fundamental objects of a bankrupt law. The indebtedness of a business man often gradually progresses from a nascent state of insolvency to the point where a petition in bankruptcy is filed. Beginning with a bare excess of debts over assets, he may go through the gamut to a very large and disproportionate excess in this respect. Preferences during such a period of declining ratio of assets to debts, adjusted according to the theory of the law now put forward, would result in a sliding scale of inequality between the various preferred creditors, as well as inequality between all creditors who have obtained preferences and the general creditors who depend upon the equality of the law to protect their interests against the alertness of creditors seeking unequal advantages through their own keenness in scenting approaching bankruptcy.

· A plausible argument in favor of the defendant's contention is grounded on the provision in § 60 b, that one element of a voidable preference is that the person receiving the transfer "shall then have reasonable cause to believe that the enforcement of such . . . transfer would effect a preference." U.S. St. June 25, 1910, c. 412, § 11, (36 U. S. Sts. at Large, 842). In this connection the intent of the debtor is not now significant. The only elements required by the act are the fact of insolvency at the time of the transfer and the excessive percentage of his debt acquired by the creditor in enforcing the transfer. *Wilson* v. *Mitchell-Woodbury Co.* 214 Mass. 514. But it is urged that a creditor cannot have a reasonable cause to believe that his conduct in receiving a transfer would effect a preference in the future, and that such cause to believe can be predicated only upon a then present and existing state of affairs. It seems to us that the answer is that a reasonable cause to believe that the transfer will result in a preference if enforced at the time of bankruptcy is the precise meaning of this provision. A creditor, conceivably in accordance with facts, might believe that the transfer would give him only an equal share with other creditors of the same class of the estate of his debtor upon immediate bankruptcy,

and yet have every reason to believe that upon postponement of the bankruptcy to some later date during the succeeding four months he would secure a disproportionately large share. It does not seem to us that to hold such a transfer valid would accord with the general purpose of the act. A creditor rightly may believe that the result of the transfer to him may be an ultimate preference when bankruptcy comes, although not one at the moment. The degree of insolvency preceding a petition in bankruptcy is often progressive, and that fact usually must be within the contemplation of the ordinary business man accepting a transfer from his bankrupt debtor. The law well may take account of this circumstance. We think a transfer under such conditions becomes voidable by the trustee if the other necessary elements are present.

It follows that the standard established by the words of the act in this connection is that of practical results. It does not justify resort to the uncertainties of theoretical inquiry as to what might have happened if bankruptcy had come at a different time from that when it actually did come.

The conclusion drawn from an examination of the words of § 60 is confirmed by general considerations. The great aim of the bankruptcy law is to provide a simple and expeditious method of distributing the assets of a bankrupt equally among his creditors as inexpensively to all parties in interest as is consistent with the accomplishment of the end in view. That aim would be frustrated in almost every particular by adopting the construction of the law urged by the defendant. It necessarily would involve complexity of inquiry, delay, inequality of distribution among creditors of the same class dependent upon the precise state of the bankrupt's financial condition at the date of each preference, and added expense both to the public and to the parties in interest.

This conclusion does not in any degree conflict with general expressions to be found in many decisions relied on by the defendant, which need not here be reviewed, to the effect that whether there has been a preference or not is to be determined as of the date of the transfer or payment. Of course that is the crucial moment in determining other factors which go to make up a preference, as, for example, whether the debtor was bankrupt and whether the creditor had reasonable cause to believe him to be bankrupt. Such expressions in judicial opinions were not directed to the point here

raised and have no authoritative weight when wrested from their context and the point under discussion in the connection in which they occur. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542.

While the precise point here presented does not appear to have been decided, the result we have reached is in harmony with what has been assumed in numerous cases. *Clarke* v. *Rogers,* 228 U. S. 534. *Swarts* v. *Fourth National Bank,* 54 C. C. A. 387. *Kimmerle* v. *Farr,* (111 C. C. A. 27) 189 Fed. Rep. 295, 298. *Brittain Dry-Goods Co.* v. *Bertenshaw,* 68 Kans. 734.

4. The fourth question is, whether, at the time of the transfer to him, the defendant had reasonable cause to believe that its enforcement would effect a preference. The trial judge found that he did. The law is plain. The defendant must have had reasonable cause to believe. Mere ground for suspicion is not enough. *Batchelder* v. *Home National Bank,* 218 Mass. 420, 422. *Putnam* v. *United States Trust Co., ante,* 199. *Grant* v. *National Bank,* 97 U.S. 80. The question, whether he had such reasonable cause to believe, is one of fact. Ascertainment of the ultimate fact depends upon all the circumstances disclosed by the credible evidence and the inferences of which it rationally is susceptible. An elaborate and able argument has been addressed to us, undertaking to demonstrate that the evidence does not support this finding. But a careful examination of the record satisfies us that it must stand. It is not necessary to go through the testimony in detail and allude to all the reasonable inferences which flow therefrom. It is enough to say that the defendant was the uncle of the bankrupt, had aided him in business ventures, had made frequent examinations of his books of account, through his trusted agent had advanced money to him on an assignment of accounts during the four months immediately preceding the bankruptcy and, in general, appears to have been intimately familiar with the bankrupt's commercial standing.

·· 5. The defendant has argued that the paragraph (3)* of the final

---

* The paragraph referred to is as follows: "(3) That the defendant, Louis Lottow, be, and he is hereby ordered to pay to the plaintiff the sum of $648.63 with interest thereon from December 3, 1912, amounting to $100.32 or a total of $748.95; and that within ten days from the date of this decree he assign to the plaintiff so much of the book accounts assigned to William Sedlis by Julius Setlin as are now uncollected, and not assigned by Sedlis in accordance with a decree of this court dated May 7th, 1915, which uncollected

decree is wrong, although conceding that it is strictly in accordance with the terms of the previous opinion. He asks in substance for a reversal of that portion of the earlier decision. In brief, it there was held that, when a creditor who had secured from his insolvent debtor a transfer of property the enforcement of which would effect a preference under the bankruptcy act, surreptitiously advanced sums of money to that insolvent debtor in return for assignments of accounts, for the express purpose of tiding the insolvent over the period of four months so that the preferences would become impregnable against attack under the bankruptcy law, which purpose had failed through supervening bankruptcy, the trustee in bankruptcy could recover the value of the accounts so assigned without first returning the money received by the insolvent. Such a transaction was held to be a fraud on the law. It is something more than a mere preference. It is a design to circumvent a law for the equitable distribution of the property of a bankrupt. It is a wrong quite outside any express prohibition of the bankruptcy act. The point was so decided upon the principle of numerous more or less closely analogous decisions there collected. See 220 Mass. 168, 169. Those like *Allen* v. *French,* 180 Mass. 487, are alone very nearly, if not quite, decisive. There appears to us to be nothing inconsistent with this conclusion in *Van Iderstine* v. *National Discount Co.* 227 U. S. 575; *Coder* v. *Arts,* 213 U. S. 223, 241; *Keppel* v. *Tiffin Savings Bank,* 197 U. S. 356, 365, and other cases relied on by the defendant. The point has been considered again and is reaffirmed, although it had become the law of the case, as well as established under the doctrine of *stare decises.* *Boyd* v. *Taylor,* 207 Mass. 335.

                                   *Decree affirmed with costs.*

*Lee M. Friedman,* (*S. J. Freedman* with him,) for the defendant.
*D. A. Ellis,* (*P. Rubenstein* with him,) for the plaintiff.

---

book accounts now amount to $159.23; and that the plaintiff retain the sum of $112.22 now in his possession, which sum was received and collected by him on said book accounts since the entry in this case of the rescript of the Supreme Judicial Court (the total uncollected book accounts then amounting to $271.45) and that the plaintiff hold title to said sum of $112.22 in his capacity as trustee in bankruptcy."