ISAAC SCHURMAN vs. IMPROVED PLASTIC-SLATE ROOFING COMPANY
& another.

Suffolk.   June 23, 1919. — September 11, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction*, To reach and apply property fraudulently conveyed.
*Corporation.*

In a suit in equity under R. L. c. 159, § 3, cl. 8, by a judgment creditor of a corpora-
tion to reach and apply to the payment of the judgment debt property of the
principal defendant fraudulently conveyed to a new corporation, it was found by
the trial judge that the formation of the new corporation and the conveyance to
it of practically all the assets of the principal defendant were for the fraudulent
purpose and with the intent of preventing the plaintiff from collecting his
judgment against the principal defendant, that both corporations shared in this
fraudulent intent and that all the officers and stockholders of each were active
in furthering it, and it was *held* that on the evidence the findings of the judge
not only were warranted but required and that the plaintiff was entitled to a
decree.

BILL IN EQUITY, filed in the Superior Court on December 13,
1917, under R. L. c. 159, § 3, cl. 8, by a judgment creditor of the
defendant Improved Plastic-Slate Roofing Company, a corporation,
to reach and apply to the payment of the judgment debt property
of that defendant alleged to have been conveyed fraudulently to
the defendant Browne-Mandile Company, alleged to have been
formed for the purpose of receiving such property with the intent
to prevent the plaintiff from obtaining satisfaction of his judgment.

The case was heard by *Chase, J.*, the evidence being reported by
a commissioner appointed under Equity Rule 35.   The judge made
the findings which are quoted in the opinion.   By his order a final
decree was entered granting the relief prayed for.   The defendants
appealed.

The case was submitted on briefs.

*H. Bergson*, for the defendants.

*W. B. Grant & H. E. Whittemore*, for the plaintiff.

PIERCE, J.   The defendant Browne-Mandile Company admits
that the plaintiff was the holder of an unsatisfied judgment against
the defendant Improved Plastic-Slate Roofing Company when the

present suit in equity was brought, under R. L. c. 159, § 3, cl. 8, to reach and apply in payment of that judgment debt the assets of the Improved Plastic-Slate Roofing Company which the bill charges were fraudulently conveyed to the defendant Browne-Mandile Company with intent to delay, hinder and prevent the plaintiff from collecting his said debt against the Improved Plastic-Slate Roofing Company.

The evidence was taken by a commissioner at the hearing before a judge of the Superior Court, and is before this court on the defendants' appeal from the final decree of the Superior Court. From that evidence the following facts appear:

The Improved Plastic-Slate Roofing Company, when the principal debt above referred to was contracted, when its exceptions were overruled on May 25, 1917 (227 Mass. 129), and when the action went to final judgment in the Superior Court on July 30, 1917, was owned by John and Antonio Mandile. These persons held all the shares of stock of the company with the exception of a single share placed by them in the name of the bookkeeper and stenographer of the corporation for voting purposes only. John Mandile, the principal owner of the stock, resigned the offices of president, of treasurer, and of director on June 8, 1917. On June 8, 1917, the stockholders of the debtor corporation voted to liquidate its assets. On the same day, Antonio Mandile and the bookkeeper, the remaining stockholder John Mandile being present, held a directors' meeting at which the resignation of John Mandile as president, treasurer and director was accepted and Antonio Mandile was elected president and treasurer to fill those vacancies. The newly elected treasurer then "reported the affairs of the company were such that the company could not continue in business. Thereupon it was voted, that the treasurer liquidate the business as much as possible of the outstanding indebtedness. Voted that the treasurer be and hereby is authorized to sell and convey any and all of the assets of the company for cash for the best price obtainable." On the same day, June 8, 1917, the assets of the company with the exception of bills receivable, by a comprehensive and extended bill of sale were sold to Charles V. Browne, an employee of the corporation, for the sum of $650, which sum Browne drew from the office of the company as a part payment of certain unpaid commissions claimed to be due him. Meanwhile, Browne,

hearing John Mandile say "Well, I'm done, I am going to get out of the business," and "Well, it's on the bum; we lost the Schurman case and I am going to get out," had suggested to John Mandile to start a new company to be known as the Browne-Mandile Company, and the necessary preliminary steps thereto had been taken. The first meeting for organization of the new corporation was held on June 8, 1917. John Mandile was elected the president and treasurer and a director. As in the old corporation he held a majority of stock, the other incorporators being the stenographer and a brother of the corporation's attorney, whose one share each belonged to John Mandile. At the stockholders' meeting the clerk read the following offer from Browne to sell and transfer the property which he had that day acquired:

"I hereby offer to sell to your company furnishings equipment and material which you can use in your business as shown in the schedule annexed, and also will assign to you all my right, title and interest in two unfinished contracts which I have purchased from the Improved Plastic-Slate Roofing Company, and all my right, title and interest in and to other contracts originally made by the Improved Plastic-Slate Roofing Company, with various people, all for the sum of $2,200, to be paid for in stock of your company, which stock is to be issued to me or my nominees. If you accept such offer, I hereby consent to the use of my name as part of your corporate name."

The stockholders of the new company thereupon "voted to accept this offer, and that the officers be authorized to issue stock upon receiving the proper bill of sale." Browne, on the back of his bill of sale, transferred by a sealed instrument "all the within described property," which was all the assets of the Improved Plastic-Slate Roofing Company with the exception of its accounts receivable. Browne never was an officer of the new company, held no stock therein, and was repaid the consideration for the bill of sale $650. The evidence showed there was no change in the conduct of the business when or after the new company was organized.

The old company had purchased on January 15, 1917, an automobile truck under a lease, for the full value of $2,785, paying in cash $235, turning in an old truck for $750, and the balance, $1,800, in twelve notes of $150 each payable monthly. Up to May 15, 1917, the notes had been regularly paid, making a total payment of

$1,585. The old company, after the rescript from this court, permitted the note due June 15, 1917, to go to protest, and then drove the car to the lessor company's shop and surrendered it under the terms of the lease. Browne and John Mandile arranged with the agent of that company "to again sell that particular truck to the Browne-Mandile Company for the amount that might be still unpaid under the old agreement." The owners of the truck sold it at auction to themselves, and then made a new lease to the Browne-Mandile Company for the balance unpaid by the Improved Plastic-Slate Roofing Company.

Upon the evidence the trial judge of the Superior Court certified in a memorandum of facts found, that "The formation of the Browne-Mandile Company and the subsequent conveyance to it of practically all the assets of the Improved Plastic-Slate Roofing Company was for the fraudulent purpose and with the intent of delaying, hindering and preventing the plaintiff from collecting his judgment against the latter company. Both corporations shared in this fraudulent intent, and all the officers and stockholders of each were active in furthering it," and ordered accordingly the decree appealed from. We think the conclusions of fact found by the presiding judge were not only warranted but required, whether the evidence be measured by standards of legal fraud or tested in the crucible of moral obligation.

The decree was right and is to be affirmed with double costs.

*Decree accordingly.*