HIGHLAND LAUNDRY COMPANY OF LOWELL *vs.* ISAAC E. WOTTON.

Middlesex.  December 4, 1935. — January 29, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Good Will. Sale,* Of good will, Construction of contract of sale. *Contract,* Construction.

In case of an oral sale of the assets and good will of a business with a contemporaneous written contract containing a covenant by the seller not to engage in a similar business for three years, the oral and written agreements were construed to be parts of a single contract; and in view of the seller's express covenant, no covenant could be implied not to compete after the three years, and his solicitation thereafter of his former customers for a competitor of the buyer did not derogate from the good will sold.

BILL IN EQUITY, filed in the Superior Court on July 9, 1935.

The final decree was entered by order of *Morton,* J.

*D. P. Ranney,* for the plaintiff.

*M. G. Rogers,* for the defendant.

PIERCE, J.  This is a suit in equity wherein the plaintiff prays that the defendant, his agents and servants, be permanently enjoined from conducting a laundry business in Lowell and surrounding towns in Massachusetts, and from interfering in any manner with the plaintiff's laundry business, in Lowell and in the surrounding towns, by soliciting the laundry business of its customers, by taking away its laundry business, by interfering with its employees, or by any means whatsoever.  Upon the completion of the pleadings the case was referred to a master, under the usual rule, to "find the facts and report his findings to the court, together with such questions of law, arising in the course of his duty, as any party may request." In compliance with the terms of the order the master heard the parties, and, no objections being taken, reported his findings to the court.  The report of the master was con-

firmed by an interlocutory decree entered October 8, 1935. After argument of counsel and consideration thereof, a final decree was entered dismissing the bill of complaint without costs to either party. The case is before this court on the appeal of the plaintiff from the final decree.

The facts found by the master, succinctly stated, are as follows: Prior to February 27, 1931, the defendant for about twenty-five years was the owner of a successful laundry business in Lowell and the surrounding towns, and in Harvard. On February 27, 1931, the defendant, whose laundry business had an extensive and valuable good will attached to it, sold that business as a going business, including all the assets and equipment except cash and accounts receivable, to the plaintiff corporation for $15,000 cash and a note for $5,000. The "transaction which constituted said sale was not accompanied by the execution of any written instrument by either of the parties thereto except said promissory note dated February 27, 1931, and except that the . . . [plaintiff] (whose corporate name then was Highland Superior Laundry Company . . .) and the . . . [defendant] simultaneously with said sale and as a part of the same transaction, executed and delivered to each other a written agreement," a copy of which, omitting the paragraph which is descriptive of the parties and the final paragraph which bears the signatures, reads: "The said Isaac E. Wotton shall enter into the services of the said corporation, the party of the first part, as the manager of their laundry business, in Lowell, aforesaid, for the period of three (3) years, from the 16th day of February, 1931, subject to the general control of said corporation. The said Isaac E. Wotton shall devote the whole of his time, attention and energies to the performance of his duties as such manager, and shall not either directly or indirectly, alone or in partnership, be connected with or concerned in any similar business or pursuit whatsoever during the said term of three (3) years. The fixed salary of the said Isaac E. Wotton, shall be the sum of thirty-six hundred ($3600.00) dollars annually, payable by the said corporation, in monthly installments of $300.00 each."

Upon the execution of this agreement the defendant was elected president of the plaintiff corporation and ceased to be engaged in the laundry business except as president and manager of the plaintiff's laundry business under the written agreement dated February 27, 1931, the terms of which were fulfilled by both parties thereto. After the expiration of his employment under the written contract the defendant, still president of the plaintiff corporation, continued to be employed by it as manager, spending most of his time supervising a mangle room or ironing room, at a reduced salary of $200 a month until January, 1935, when his salary was again reduced to $35 a week.

At the time of the sale of the defendant's business, a Miss McDonough had been for many years in the employ of the defendant in charge of his pressing room in the laundry. After the sale she continued in the plaintiff's employ, was a competent employee and was loyal to her employer while she remained in the plaintiff's employ. Miss McDonough gave up her employment with the plaintiff on June 11, 1935. Late in June, 1935, she formed a copartnership with one John Hanlon, who was and for some time had been a competitor of the plaintiff in Lowell, and who then conducted a laundry under the name and style of the Merrimack and Sunshine Laundry Company, hereinafter called the Merrimack Laundry. The copartnership thus formed continued the business under the same name and style.

On June 29, 1935, the defendant was greatly dissatisfied with the situation at the plaintiff's laundry and with his own situation, and on that day handed to Farnsworth, treasurer of the plaintiff corporation, a letter addressed to the board of directors of the corporation, which reads: "Gentlemen: I hereby tender to you my resignation both as President and Manager of the Highland Laundry Company to take effect at the close of business on July 6, 1935." Thereupon the defendant and Farnsworth had a conversation wherein Farnsworth told the defendant that, inasmuch as the defendant was getting through, he, Farnsworth, did not think the defendant " ought to go over and solicit business on the" plaintiff's time, and thought it would be better for

the defendant and the plaintiff that the defendant "take a vacation for a week and not be around the plant, as long as he . . . [the defendant] was going into business for himself." The defendant answered "that it was all right that he would stay until noon to straighten out some things and that he would leave." Respecting this conversation the master found that the defendant was discharged by the plaintiff "as its employee on June 29, 1935, and that previous to that day he had talked with Mr. Farnsworth about going into business for himself." He further found upon the evidence that the defendant "had nothing to do, directly or indirectly, with the termination by Miss McDonough and the other eleven employees . . . [mentioned in the report] of their employment with the" plaintiff, "with the matter of Miss McDonough's entering into said partnership, and with the employment of said eleven employees by that partnership."

Before the sale to the plaintiff the defendant had among his larger customers the Mitchell Boys' School, located in Billerica, which paid him $3,000 for laundry work during the year preceding February 27, 1931, and the Vesper Country Club, located at Tyngsborough, part of whose work he had had for many years and about one half of whose work he was doing at the time of the sale of his business, the plaintiff doing the other half. After the discharge of the defendant on June 29, 1935, and during the week of July 1, 1935, the defendant visited the Mitchell Boys' School and while there told Mitchell, the head of the school, that he was through with the plaintiff, and Mitchell said, "When you are settled and know you are going to be with some other laundry call me up or come and see me." When the defendant entered the employ of the Merrimack Laundry, Mitchell immediately, without any further communication with or from the defendant but out of regard for him, gave the school's laundry work, which is small in amount in the summer, to the Merrimack Laundry. About July 8, 1935, the defendant entered the employ of the Merrimack Laundry at a salary of $25 a week. His duties were those of a foreman and adviser, and he did practically the same kind

of work he did for the plaintiff, that is to say, he spent most of his time supervising a mangle or ironing room, and saw to it that the work was washed properly and brought to the pressing room properly. At about the time the defendant began to work for the Merrimack Laundry, without solicitation on his part, he was sent for by the steward of the Vesper Country Club and was informed that the steward had been directed by the house committee of the club to give the laundry work of the club to the defendant if he was associated with a laundry. The defendant thereupon turned over the club's laundry work to the Merrimack Laundry, and the Merrimack Laundry received and has continued to do the club's laundry work.

The master states that "It is probable that some of the laundry work which the" plaintiff "was doing for customers on June 29, 1935 [the day the defendant was discharged], other than that of the Mitchell Boys' School and the Vesper Country Club, has since come to the Merrimack Laundry because of the . . . [defendant's] connection with the latter laundry, but upon the evidence before me, I do not find that he directly or indirectly solicited such work in any instance." The master further found that since the defendant "entered the employ of the Merrimack Laundry [he] has devoted himself wholeheartedly to his employment and his duties there and intends to continue to do so." Finally, in response to the question by the plaintiff's attorney, "Is it not your intention to actively compete with the Highland Laundry Company?" the defendant answered: "As far as my knowledge of the business in my capacity, it is my desire to compete with the Highland Steam Laundry."

At the outset, assuming the defendant voluntarily sold the good will of his laundry business to the plaintiff and that the disposition of the good will was not limited or varied by agreement, we are met with the question whether on the facts found the defendant, after the sale, engaged in a competing business which, if continued, will derogate from the good will which he has sold; *Old Corner Book Store* v. *Upham*, 194 Mass. 101; *Foss* v. *Roby*, 195 Mass. 292, 296–297; *Gordon* v. *Knott*, 199 Mass. 173; *Moore* v. *Rawson*,

199 Mass. 493, 497; *Marshall Engine Co.* v. *New Marshall Engine Co.* 203 Mass. 410, 422; *C. H. Batchelder & Co. Inc.* v. *Batchelder,* 220 Mass. 42, 44; *Ruggiero* v. *Salomone,* 248 Mass. 237; *Martin* v. *Jablonski,* 253 Mass. 451, 456; *Martino* v. *Pontone,* 270 Mass. 158; or, if he did not set up his own business, whether he had solicited patrons of the plaintiff's business to follow him from the plaintiff to the Merrimack Laundry; *Ruggiero* v. *Salomone,* 248 Mass. 237. *Boutelle* v. *Smith,* 116 Mass. 111. We think a competing laundry in the territory covered by the plaintiff's business would derogate from the good will sold, and that on the facts found the defendant indirectly solicited the patronage of the Mitchell Boys' School and of the Vesper Country Club for the benefit of the Merrimack Laundry. We think, however, that the written contract under seal, dated February 27, 1931, which was executed simultaneously with the sale of the laundry business, was not a separate contract, as the plaintiff contends, but was intended to operate as a part of the sale contract and to limit the implied good will contract to a term or period to expire three years from February 27, 1931. So construed, there are no facts found which would warrant a finding that the defendant directly or indirectly did any act during those three years or thereafter in derogation of his implied sale of the good will of his laundry business to the plaintiff.

*Decree affirmed.*