EDWARD I. PERKINS, trustee in bankruptcy, vs. BECKER'S
CONSERVATORIES, INC. & others.

Middlesex.    May 8, 1945. — June 21, 1945.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

Fraudulent Conveyance.  Bankruptcy, Fraudulent conveyance, Preference,
Property vesting in trustee, Good will.  Unlawful Interference.  Un-
fair Competition.  Conspiracy.  Good Will.  Equity Pleading and Prac-
tice, Rehearing.

A conveyance of all the assets of the proprietor of a florist business to a
newly formed corporation with the purpose of perpetuating the busi-
ness under a corporate form and of utilizing such assets therein, and
in consideration of a promise by the corporation to assume the obliga-
tions of "the florist business only" but with intent to "exclude" other
existing creditors of the proprietor, was not a preference under the
bankruptcy act since the corporation was not a creditor of the proprie-
tor, but was a conveyance in fraud of the "excluded" creditors and
might be set aside at the instance of a trustee in bankruptcy appointed
upon the subsequent bankruptcy of the proprietor.

Upon a fraudulent conveyance of all the assets of one, later adjudicated
a bankrupt, to a corporation formed to receive them, the trustee in
bankruptcy was entitled to have the corporation transfer to him tan-
gible personalty still in its possession and pay him the value of mer-
chandise sold by it and accounts receivable collected by it.

This court on appeal in a suit in equity ordered a rehearing of an issue
respecting which a recital of fact in the final decree was contrary to a
determinative finding in a report of material facts made by the trial
judge.

The transferee in a fraudulent transfer of accounts receivable, later col-
lected by the transferee, was accountable to a trustee in bankruptcy
of the transferor for the amount so collected and was not entitled to a
deduction of an amount expended by him in paying the claims of
some, but not all, of the creditors of the transferor in accordance with
a promise so to pay made by him to the transferor as consideration for
the transfer.

Good will of a business, although found to have "no value" in a suit in
equity by a trustee in bankruptcy of the proprietor of the business to
set aside a fraudulent transfer by him of all its assets, including the
good will, was not to be omitted from a decree ordering the trans-
feree to convey such assets to the plaintiff.

A trustee in bankruptcy seeking in a suit in equity to set aside a fraudu-
lent transfer of all the assets, including the good will, of a florist busi-
ness conducted by his bankrupt, was entitled to have included in a

decree·in his favor a provision enjoining the bankrupt and the transferee from using or causing to be used the trade name of the business, which included the bankrupt's surname, at its former location in connection with any florist business and from purporting, anywhere in the area served by the bankrupt's business at the date of the transfer, to conduct a continuation of that business.

An allegation, in a bill in equity by a trustee in bankruptcy to set aside a fraudulent conveyance by the bankrupt, that the transfer had been made pursuant to a conspiracy among the defendants, added nothing and was not a ground for requiring any payment to the plaintiff by a defendant who, although he was president of a corporate defendant which was the grantee in the conveyance and acted for it in the transaction, did not personally receive any of the property conveyed or proceeds thereof or any benefit from the transaction.

In a suit in equity by a trustee in bankruptcy to set aside a fraudulent transfer of assets made by the bankrupt before his bankruptcy in consideration of the transferee's promising to pay certain debts of the transferor, which the transferee did so pay previous to the bankruptcy, the bankrupt, a defendant, was chargeable to the plaintiff jointly with the transferee to the extent of the amount of the debts so paid for his benefit by the transferee.

BILL IN EQUITY, filed in the Superior Court on October 15, 1943.

The suit was heard by *O'Connell*, J.

*R. H. Klainer*, for the plaintiff.

*W. I. Schell*, for the defendant.

WILKINS, J.  This is a bill in equity by the trustee in bankruptcy of Karl F. Becker against Becker's Conservatories, Inc., Karl F. Becker, and his mother, Sarah H. Becker, to set aside, as fraudulent, transfers of assets relating to the bankrupt's florist business, conducted under the name of Becker's Conservatories, alleged to have been made pursuant to a conspiracy among the defendants, and for an accounting.  The case was heard by a judge, who on February 10, 1944, filed voluntary findings of fact.  Later the case was referred to a master, who filed a report of additional findings which was confirmed.  From a final decree entered on February 2, 1945, granting limited relief the plaintiff appealed.  On February 7, 1945, the judge adopted his voluntary findings as a report of "the material facts found by him."  G. L. (Ter. Ed.) c. 214, § 23.  *Acacia Mutual Life Ins. Co.* v. *Feinberg, ante*, 246, 247.  The case is here without a report of the testimony.

The report of material facts contains the following: The corporate defendant was organized on February 1, 1943. Prior thereto the bankrupt for many years was manager and later owner of a florist business which had long been conducted by his grandfather and his father.   On February 1, 1943, the bankrupt entered into a written agreement with the corporation acting through the defendant Sarah H. Becker as president.   By this and other instruments the bankrupt, who was indebted to creditors of the florist business and to creditors of an unsuccessful apartment house venture, in exchange for a promise by the corporation to assume the obligations of "the florist business only," transferred to the corporation "the business of Becker's Conservatories, including such assets as it actually possessed, including [accounts receivable,] good will, merchandise, motor vehicles and such articles as could be found to be personalty . . . with intent to exclude certain of the then existing creditors, and as against the rights of such creditors."   The bankrupt and his mother "in joining in the effort to keep the business going, but under a corporate name, clearly had the definite purpose of putting these [assets] as far as legally possible beyond the reach of creditors" of the bankrupt.   It "was the dominant purpose of Mrs. Sarah H. Becker, in having a corporation formed, to make certain that no creditor of the conservatory business should suffer a loss by reason of mismanagement by her son, or becoming involved in the apartment house venture; . . . she acted in good faith, as instanced by her loans to her son," which aggregated $21,443.   The adjudication of bankruptcy was on August 5, 1943, and the mother was not listed as a creditor.   (The answers allege, although there is no such finding, that the indebtedness of the bankrupt was $23,000 to florist creditors — apparently chiefly the mother — and $8,000 to apartment house creditors.) The florist business was conducted on real estate owned by the mother, to whom the bankrupt before the bankruptcy paid $100 monthly in addition to the municipal taxes and maintenance expenses.   The "evidence as a whole discloses a preference as against the rights of other creditors

was created by Karl F. Becker conveying such assets as he possessed to the corporation. When [the conveyance was] entered into Mrs. Sarah H. Becker (mother) and her son were actuated solely to keep the florist business as a 'going business.' If liquidated at that time it had little or any value which would have benefited general creditors of Karl F. Becker. Nevertheless, such assets as did exist were equitably assets to which all creditors had rights . . .. [There] was no concealed purpose to defraud, but there was an open, avowed purpose of perpetuating the florist business, under a corporate direction, and in relation to such continuance of business to utilize and enjoy assets above found to be the property of the bankrupt estate. Because of such conclusions, as warranted by the facts, a preference was established, and the conveyances, as such, are not free from being reached and applied because conveyed more than four months prior to the adjudication of bankruptcy." · "The 'good will' . . . existed solely around the use of the family name of Becker and was valueless." Because "the 'good will' had no value, there is no reason to order conveyance of same to the plaintiff." "Because the corporation acted in good faith in assuming the 'bills payable,' I find it is equitably entitled to a set-off of the total amount paid as against the total amount, if any, of 'bills receivable' paid to the corporation." The accounts receivable totaled $1,520.89, and the accounts payable $1,228.38. (The master found that the former had been collected, and the latter paid, in full; and that exclusive of two motor vehicles, the personal property transferred by the bankrupt to the corporation had a value of $225.) The personalty or "fixtures" are "assets of the bankrupt estate." "The motor vehicles . . . are assets of the bankrupt estate and the plaintiff is entitled to have same conveyed to him."

The final decree provided that (1) the corporation is indebted to the plaintiff for $292.51 for accounts receivable, $225 for "fixtures," and $5 for merchandise, a total of $522.51; (2) "as to the two motor vehicles . . . the plaintiff has received payment in the sum of $225, being the value

agreed upon between the plaintiff and the defendant Becker's Conservatories, Inc. and . . . [they are] declared to be the property of the Becker's Conservatories, Inc."; (3) execution should issue against the corporation for $522.51; and (4) the bill of complaint should be dismissed against the individual defendants.

Since the case is here on report of material facts under the statute, no findings not expressly made can be implied from the decree, but this court may draw proper inferences from the facts expressly found. *Distasio* v. *Surrette Storage Battery Co.* 316 Mass. 133, 135.

The findings clearly show that the bankrupt made, and the corporation with full knowledge accepted, transfers of the assets of the florist business — which were all the assets the bankrupt had — for the express purpose of excluding all creditors whose claims did not arise from that business. This was a conveyance in actual fraud of such creditors without regard to the nature or amount of the consideration. *Wadsworth* v. *Williams*, 100 Mass. 126, 130–131. *Banca Italiana Di Sconto* v. *Bailey*, 260 Mass. 151, 160. *R. E. McDonald Co.* v. *Finkovitch*, 270 Mass. 362, 367. *Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280, 290. *Merchants Discount Co.* v. *Esther Abelson, Inc.* 297 Mass. 517, 519–520. *Joseph P. Manning Co.* v. *Shinopoulos*, 317 Mass. 97, 99. G. L. (Ter. Ed.) c. 109A, § 7. At the instance of the trustee in bankruptcy it will be set aside. *Bailey* v. *Wood*, 211 Mass. 37, 41. *Powers* v. *Heggie*, 268 Mass. 233, 241. *Mason* v. *Wylde*, 308 Mass. 268, 275. *Thomas E. Hogan, Inc.* v. *Berman*, 310 Mass. 259, 261. See U. S. C. (1940 ed.) Title 11, § 110 (a) (4); § 107 (d) (2); (d) (6); (e). See *Putnam* v. *Southworth*, 197 Mass. 270. The judge's conclusions that the corporate defendant and its president, the defendant Sarah H. Becker, acted in good faith are at variance with the subsidiary findings and must be disregarded. The result is not affected by the erroneous description of the transaction as a "preference." See *Barishefsky* v. *Cohen*, 299 Mass. 360, 362; *Mason* v. *Wylde*, 308 Mass. 268, 283. The corporate defendant was not a creditor of the bankrupt. It came into being as a

device to receive the fraudulent conveyance. *Schurman* v. *Improved Plastic-Slate Roofing Co.* 233 Mass. 499. See *Sampsell* v. *Imperial Paper & Color Corp.* 313 U. S. 215.

The question remains as to the relief to be given. So far as possible all the property fraudulently transferred must be returned. The provisions of the final decree respecting the personal property or "fixtures" not only are unsupported by, but are contrary to, the findings, and cannot stand. *Carilli Construction Co.* v. *John Basile & Co. Inc.* 317 Mass. 726, 730. An inconsistency is presented by the finding (adopted February 7, 1945, as part of the report of material facts) that the motor vehicles are assets of the bankrupt estate and by the recital in the final decree (entered on February 2, 1945) that the plaintiff has been paid for the motor vehicles, which now belong to the corporate defendant. The plaintiff contends that he is entitled to them. On this state of the record we think that the best way of ensuring the right result is to have the case further heard, if the parties do not agree in this respect. The plaintiff is entitled to the value of the stock of merchandise, which has been sold. *Hubbell* v. *Currier*, 10 Allen, 333, 337. *Walworth Co.* v. *Locke Stevens & Sanitas, Inc.* 300 Mass. 557, 559, and cases cited. *Buffum* v. *Peter Barceloux Co.* 289 U. S. 227, 236. Glenn on Fraudulent Conveyances (Rev. ed.), § 239. See 24 Am. Jur., Fraudulent Conveyances, § 128. The same is true of the bills receivable, all of which have been collected. *Klein* v. *Hoffheimer*, 132 U. S. 367, 378–379. No credit can be given for the discharge of the accounts payable. *Rubenstein* v. *Lottow*, 220 Mass. 156, 169. *Manufacturers National Bank* v. *Simon Manuf. Co.* 233 Mass. 85, 89–90. *Massachusetts Trust Co.* v. *Simon Manuf. Co.* 237 Mass. 92, 96. *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 417–418. *R. E. McDonald Co.* v. *Finkovitch*, 270 Mass. 362, 367. 79 Am. L. R. 133.

The good will was correctly found to be an asset of the bankrupt. *Lothrop Publishing Co.* v. *Lothrop, Lee & Shepard Co.* 191 Mass. 353, 355. *Mutual Life Ins. Co.* v. *Menin*, 115 Fed. (2d) 975, certiorari denied, 313 U. S. 578. Remington on Bankruptcy (4th ed.) § 1254. See *Canadian Club*

*Beverage Co.* v. *Canadian Club Corp.* 268 Mass. 561; *Cardinal* v. *Taylor*, 302 Mass. 220. It is not to be omitted from the decree because it was found to be of no value. "The trustee of the estate of a bankrupt . . . upon his . . . appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition in bankruptcy . . . to all . . . (4) property transferred by him in fraud of creditors." U. S. C. (1940 ed.) Title 11, § 110 (a). We do not agree with the plaintiff that he is entitled to an injunction against the use by the defendants of the name "Becker's Conservatories" in connection with a florist business without regard to time or place. It is settled in this Commonwealth that after a voluntary transfer of good will the grantor cannot derogate from his grant by engaging in a competing business of the same kind, selling the same goods, and endeavoring to deal with the same customers. *Gordon* v. *Knott*, 199 Mass. 173, 178, and cases cited. *Highland Laundry Co. of Lowell* v. *Wotton*, 293 Mass. 322, 326, 327, and cases cited. Where, however, the transfer is involuntary, an individual former owner may establish another business of the same kind and solicit trade from the old customers. *Hutchinson* v. *Nay*, 187 Mass. 262, 265–266. *Moore* v. *Rawson*, 199 Mass. 493, 498. *Beauchamp* v. *United States*, 76 Fed. (2d) 663, 667. *Von Bremen* v. *MacMonnies*, 200 N. Y. 41, 51. *Matter of Brown*, 242 N. Y. 1, 10. *Green & Sons (Northampton), Ltd.* v. *Morris*, [1914] 1 Ch. 562. 82 Am. L. R. 1038–1040. 24 Am. Jur., Good Will, § 24. 38 C. J. S., Good Will, § 12b. Subject to the foregoing, he may use his own name. *Moore* v. *Rawson*, *supra*, 498. *Sawilowsky* v. *Brown*, 288 Fed. 533, 536–537. *Beauchamp* v. *United States*, 76 Fed. (2d) 663, 667.

The decree was right in not providing for a money payment by the defendant Sarah H. Becker. The bill of complaint was entitled "bill to set aside fraudulent conveyances," and prayed that the defendants "be ordered to account for such of said property as may have been dissipated, if any, for such of said accounts receivable as have been collected, and for the profits of said business since the

transfer thereof as aforesaid." There was no finding that there were profits, and no such question is argued. The suit was not a proceeding to recover damages for conspiracy to do wrong to the plaintiff. *R. E. McDonald Co.* v. *Finkovitch*, 270 Mass. 362, 367–368. See *Jacobs* .v. *Anderson*, 244 Mass. 125. Nothing is added by the allegation of conspiracy. *Wellington* v. *Small*, 3 Cush. 145, 150. *Boston* v. *Simmons*, 150 Mass. 461, 463. See *Comerford* v. *Meier*, 302 Mass. 398, 401. It has been frequently held that no action lies, at least in favor of a creditor holding no judgment or attachment, for conspiring with a debtor to make a fraudulent disposition of his property. See *Lamb* v. *Stone*, 11 Pick. 527; *Bradley* v. *Fuller*, 118 Mass. 239; *Jenks* v. *Hoag*, 179 Mass. 583, 585; *Adler* v. *Fenton*, 24 How. 407; *Duell* v. *Brewer*, 92 Fed. (2d) 59, 61; Glenn on Fraudulent Conveyances (Rev. ed.) § 74; Bump on Fraudulent Conveyances (4th ed.) § 528. Many cases are collected in notes in 47 L. R. A. 433, 26 L. R. A. (N. S.) 545, L. R. A. 1917E, 1148, 2 Am. L. R. 287, and 112 Am. L. R. 1250. See also *Rubenstein* v. *Lottow*, 220 Mass. 156, 164. There is nothing to show that the defendant Sarah H. Becker individually ever had possession or control of, or title to, any of the property or collected any of the bills receivable or received any payment out of the proceeds of the property or of the bills receivable. There are no findings that any payments were made to her for any purpose, whether on account of her loan or for rent or otherwise for her real estate. She is not to be charged because she may have entertained hopes in these respects, or because she wished the florist business to remain in the family. She derived no indirect benefit, as did the bankrupt through the payment of his bills payable (which we infer was before the date of bankruptcy), and for the amount of which the final decree was in error in not charging him. *National Bank of Newport* v. *National Herkimer County Bank*, 225 U. S. 178, 184. See *Duell* v. *Brewer*, 92 Fed. (2d) 59, 61; Glenn on Fraudulent Conveyances (Rev. ed.) § 421. It does not appear, however, that any other payments to, or for the benefit of, the bankrupt were made out of the assets fraudulently

conveyed.  The plaintiff has adduced no authority allowing recovery in greater amount against the bankrupt or in any amount against the defendant Sarah H. Becker.  In *Hubbell v. Currier*, 10 Allen, 333, 337, after a fraudulent conveyance of real estate by a grantor through an intermediate person to his wife, who had knowledge of the fraud, the fraudulent grantor and his wife fraudulently mortgaged the property to his brother, who, taking with knowledge of the fraud, assigned the mortgage to a purchaser for value and without notice.  The plaintiff, who was the assignee in insolvency of the fraudulent grantor, was allowed to recover the real estate subject to the mortgage and the amount of the mortgage from the fraudulent grantor, his wife, and the fraudulent mortgagee, all of whom were grantors in instruments subsequent to the original conveyance.  In *Rubenstein v. Lottow*, 220 Mass. 156, there was a fraud on the bankruptcy act itself to prevent its effective operation.  In *Samuel & Nathan E. Goldstein, Inc. v. Dietz*, 284 Mass. 548, the original record shows that the only payment of money decreed was against the maker of a promissory note.

The final decree must be reversed.  A new final decree should provide that the transfers were in fraud of creditors and are set aside; that the corporate defendant is indebted to the plaintiff in the sum of $5 for merchandise, and $1,520.89 for accounts receivable, totaling $1,525.89, with interest; that of this amount the defendant Karl F. Becker is jointly indebted with the corporate defendant to the plaintiff in the sum of $1,228.38, the amount of his own obligations which were paid, with interest;[1] that the corporate defendant execute to the plaintiff transfer of the articles of personal property itemized in the schedule annexed to the master's report; that the corporate defendant execute to the plaintiff an assignment of the good will of the business known as "Becker's Conservatories"; and that all the defendants be enjoined, except with the consent of the plaintiff, or his successors and assigns, from using or causing to be used at the old location the name "Becker's

---

[1] See *Gray* v. *Chase*, 184 Mass. 444, 450; *Boyer* v. *Bowles*, 310 Mass. 134, 142.

Conservatories" in connection with a florist business and from purporting anywhere in the area served by the business on February 1, 1943, to be a continuation of such business. If necessary, the case shall be further heard to determine the reasonable limits of such area. See *Edgecomb v. Edmonston,* 257 Mass. 12; *Whiting Milk Co.* v. *O'Connell,* 277 Mass. 570; *Staples Coal Co.* v. *City Fuel Co.* 316 Mass. 503, 511, and cases cited. The case shall also be further heard, if necessary, as to the motor vehicles. The final decree shall also provide for the taxation of the plaintiff's costs, including the costs of this appeal, against all the defendants.

It follows that the final decree is reversed, and the case remanded for further hearing, if necessary, and for the entry of a new final decree in accordance with this opinion.

*So ordered.*