JAMES F. PITMAN *vs.* J. C. PITMAN & SONS, INC.

Essex.    April 6, 1949. — June 6, 1949.

Present: QUA, C.J., LUMMUS, RONAN, & SPALDING, JJ.

*Release. Contract,* Release, Contract not to compete. *Good Will. Equity Pleading and Practice,* Waiver, Declaratory proceeding. *Waiver.*

The requirement of G. L. (Ter. Ed.) c. 231A, § 1, that an actual controversy be "specifically set forth" in the pleadings in a proceeding under that chapter is not jurisdictional and a failure of the plaintiff to comply therewith may be waived by the defendant by answering and going to hearing on the merits without raising the point.

Provisions of a contract made between a corporation and the proprietor of a business upon the corporation's acquiring all the assets of such business and employing him, whereby he agreed that for a stated period after the termination of such employment he would refrain from certain acts in competition with the corporation and that it should have certain remedies for any breach by him, created obligations to and rights in the corporation which might be extinguished by a release, and were extinguished by a general release given to him by it of "all . . . covenants, contracts, agreements . . . and liabilities whatsoever of every name and nature."

BILL IN EQUITY, filed in the Superior Court on February 10, 1947.

The suit was heard by *Forte*, J.

*E. R. Greenhood*, for the defendant, submitted a brief.

*J. M. Fogarty*, for the plaintiff.

SPALDING, J. The purpose of this bill for declaratory relief is to determine the effect of a general release under seal dated November 10, 1944 (which ran from the defendant to the plaintiff), upon an agreement dated May 25, 1932, to which they were parties. The agreement recited that the defendant had acquired all the property and assets of the partnership composed of the plaintiff and John C. Pitman and which did business as John C. & James F. Pitman; that the defendant had also acquired the entire assets of A. & E. Pitman Manufacturing Co., Inc., a corporation doing business in Lynn, Massachusetts, of which Amos C. Towle, Eugene W. Pitman and Arthur R. Pitman were the directors and principal stockholders; and that the defendant proposed "to continue to engage in the business formerly carried on by . . . [the partnership and the corporation] and . . . to take into its employ the individual parties hereto." In paragraph 3 of the agreement each of the individual parties agrees with the defendant "That if at any time hereafter he ceases to remain in the employ of the corporation whether such cessation of employment be caused by his own act or by act of the corporation he will not during a period of ten years following such cessation of employment use or employ the name 'Pitman' in any manner in connection with the carrying on by himself or by any other person, firm or corporation of any business in competition with or similar to the business carried on by the corporation in any part of the United States or the Dominion of Canada in which the corporation may be engaged in business or in which its product may be sold or delivered and that he will not during such period be or become a stockholder, officer, director, partner, member, employee, agent or salesman of any person, firm or corporation engaged in carrying on any such competitive or similar business in which the name 'Pitman' is used or employed in any manner." Under paragraph 4 of the agree-

ment the corporation was entitled to an accounting for profits and to specific performance of the agreement in the event of a breach of it by any one of the individual parties. The agreement was executed by the defendant (which is the "corporation" referred to therein), and by Amos C. Towle, John C. Pitman, Eugene W. Pitman, Arthur R. Pitman, and the plaintiff, who were referred to in the agreement as the "individual parties." On November 10, 1944, the plaintiff tendered his resignation [1] as president, assistant treasurer, and director of the defendant, and at the same time disposed of his stock in the defendant to John C. Pitman. On the same day the defendant executed and delivered to the plaintiff a general release under seal. [2] The execution, delivery and validity of both the agreement and the release are not questioned.

The judge ruled that the plaintiff was relieved by the release from the obligations imposed upon him under the provisions of the agreement set forth above, and a decree to that effect was entered, from which the defendant appealed. The evidence, which is mainly documentary, is reported.

It is contended at the outset that the court lacked jurisdiction to hear the case because, although an actual controversy was alleged in the pleadings, it was not "specifically set forth" therein as required by G. L. (Ter. Ed.) c. 231A, § 1, as inserted by St. 1945, c. 582, § 1, and proof that there was such a controversy was lacking. The defendant concedes that this point was not raised in the court below, but argues that the question is jurisdictional and that it may be raised for the first time in this court. The short answer is that the record discloses that there was in fact an actual

---

[1] The resignation was formally accepted as of November 21, 1944.

[2] The release reads as follows: "In consideration of one dollar and other valuable considerations to it paid by James F. Pitman of Marblehead, Mass. the receipt whereof is hereby acknowledged the undersigned hereby remise, release and forever discharge the said James F. Pitman of and from all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and in equity, which against the said James F. Pitnam or its heirs and assigns the undersigned now has or ever had from the beginning of the world to this date."

controversy. We do not pause to consider the further question whether the allegations of the bill meet the statutory requirement that the controversy must be "specifically set forth," for we are satisfied that the point is not now open to the defendant. It related only to a matter of pleading. By answering and going forward to a hearing on the merits without raising the question, the defendant must be taken to have waived it. *Berenson* v. *H. G. Vogel Co.* 253 Mass. 185, 187. *Luciano* v. *Caldarone*, 255 Mass. 270, 272. *Whitney* v. *Whitney*, 316 Mass. 367, 371. *Hill* v. *Trustees of Glenwood Cemetery*, 323 Mass. 388, 392–393.

On the merits the defendant's position is that it received from the plaintiff a transfer of his partnership business; that such transfer includes a grant of good will which prohibits competition; that the agreement of May 25, 1932, merely describes the good will in detail; and that the "vested grant" of such good will is "unaffected by a mere release in general terms." The only instrument before us relating to that transaction is the agreement of May 25, 1932. As noted above, that agreement recited that the defendant had acquired "all the property and assets" of the firm of which the plaintiff was one of the partners. We agree that ordinarily when the entire assets of a business are sold "it is presumed that the good will passes with the other assets." *Canadian Club Beverage Co.* v. *Canadian Club Corp.* 268 Mass. 561, 568. *Lynn Tucker Sales, Inc.* v. *LeBlanc*, 323 Mass. 721, 723. And it is settled in this Commonwealth that after a voluntary transfer of good will the grantor cannot engage in a competing business which will derogate from the good will which he has sold. *Old Corner Book Store* v. *Upham*, 194 Mass. 101, 104–105. *Highland Laundry Co. of Lowell* v. *Wotton*, 293 Mass. 322, 326–327. *Perkins* v. *Becker's Conservatories, Inc.* 318 Mass. 407, 413. *Auslyn, Inc.* v. *Rousseau*, 321 Mass. 735. If we assume that when the defendant acquired the assets of the partnership it also acquired the good will together with the right attaching thereto which has just been mentioned, we are nevertheless of opinion that the decree of the court below was right.

What effect the release would have had on that good will and the rights included in it by implication had the agreement of May 25 never been executed need not concern us. The parties saw fit to put a portion of their bargain in the agreement before us. The provisions of that agreement here material were in the form of covenants or promises on the part of the plaintiff that for a period of ten years following the cessation of his employment with the company he would not do the various things prohibited by paragraph 3, and that in the event of a breach of the agreement by him the defendant would be entitled to an accounting for profits and to specific performance of the agreement. Whether they were made in conjunction with the sale of a business or apart from it, they were undertakings of the sort that could be extinguished by a release, provided, of course, appropriate language to that end was employed. It does not follow that, because the release did not operate as a transfer back of the good will, it might not discharge express covenants or promises which were made in conjunction with the grant of it. The language employed in the release was very broad. It embraced "all . . . covenants, contracts, agreements . . . and liabilities whatsoever of every name and nature." Plainly it comprehended the provisions of the agreement under consideration. The rights and obligations contained in these provisions, although executory, were not mere possibilities (*Pierce* v. *Parker,* 4 Met. 80, 89); they were in existence when the release was executed and were extinguished by it. *Willett* v. *Herrick,* 258 Mass. 585, 595. *Radovsky* v. *Wexler,* 273 Mass. 254, 257. *Tupper* v. *Hancock,* 319 Mass. 105, 108.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*