SAMUEL ROSEN, trustee in bankruptcy, *vs.* JOSEPH B. SOMERSET & others.

Suffolk.    April 7, 1952. — July 25, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Corporation*, Subscription to stock. *Fraudulent Conveyance. Value.*

A subscriber to shares of stock of a corporation who paid a "fair and reasonable price" for the shares but paid under $100 a share owed nothing on his subscription where it appeared that the authorized capital stock was shares having no par value and not shares of $100 par value.

A trustee in bankruptcy having a right to avoid a second mortgage of personalty given by the bankrupt to a defendant in fraud of creditors was entitled to recover from the defendant the fair market value of the equity in the personalty as located on the bankrupt's premises and as of the time of its purchase by the defendant at a sale in foreclosure of the second mortgage where it appeared that the personalty, consisting of all the chattels employed by the bankrupt in the conduct of a business, had not been removed from his premises at such time and that the defendant had used the personalty on those premises thereafter but was unable to return it to the trustee because of a subsequent foreclosure of the first mortgage.

The fair market value of the equity in personalty covered by two mortgages, as located on the mortgagor's premises and as of the time of its sale in foreclosure of the second mortgage, was not necessarily shown by the amount for which it was purchased by the second mortgagee at the sale and which he paid in the form of credit to the mortgagor on his indebtedness or by an amount which the second mortgagee received as surplus from a subsequent foreclosure of the first mortgage.

BILL IN EQUITY, filed in the Superior Court on May 8, 1950.

The plaintiff appealed from a final decree entered after hearing by *Brogna,* J.

*Morris Michelson,* for the plaintiff.

*Allen Gerson,* (*Jacob Geisinger* & *Arthur L. Eno, Jr.,* with him,) for the defendant Joseph B. Somerset.

WILLIAMS, J.  This is a suit in equity by the trustee in bankruptcy of Bart Cleansers and Launderers, Inc., against Joseph B. Somerset, his wife Sadie T. Somerset, Samuel Potish, and Dart Cleansers, Inc.  The trustee seeks an accounting from each of the defendants; an order that Somerset, his wife and Potish pay alleged balances due on their subscriptions to stock of Bart Cleansers and Launderers, Inc., hereinafter called the corporation; the cancellation of a chattel mortgage by the corporation to Somerset and his wife; the setting aside of a foreclosure of that mortgage; and an order that Dart Cleansers, Inc., return to the plaintiff the assets of the corporation "seized by them." Included in the answer of Somerset and his wife is a counterclaim for moneys lent by them to the corporation.  The record contains the following findings of material facts as summarized by us.  There is no report of the evidence.

Somerset, his wife, and Potish, his brother-in-law, organized the corporation in September, 1947, for the purpose of acquiring the cleansing and laundering business owned by one Bartoli and his wife. They signed an agreement of association wherein it was stated that 500 shares of stock of no par value were authorized; that Joseph B. and Sadie T. Somerset had subscribed jointly "to 210 shares in full in cash"; and that Samuel Potish had subscribed "to 140 shares in full in cash." The minutes of the first meeting of the incorporators contained a vote that the capital stock be $50,000 divided into 500 shares of common stock of no par value but the words " 'fifty thousand' dollars" were "stricken out" of the agreement of association. The articles of organization which are filed with the indorsed approval of the commissioner of corporations and taxation after the submission to him of the agreement of association and the record of the first meeting of the incorporators, including the by-laws (G. L. [Ter. Ed.] c. 156, § 11), contained no mention of $50,000. Although the first meeting had been held and the "articles of association" signed on September 26, 1947, through neglect of counsel "the papers" were not filed until April 27, 1948. The certificate of incorporation was issued on June 14, 1948, "as of April 27, 1948." Meanwhile the incorporators, assuming that the corporation had been chartered, elected Potish president, Somerset treasurer, his wife clerk, and all three directors. 210 shares were issued to Somerset and his wife and 140 shares to Potish. The Somersets paid in $15,000 which "was a fair and reasonable price for the 350 shares of stock which were issued." Potish according to the understanding of all concerned paid in nothing. On December 13, 1948, he surrendered his stock certificate. The cleansing and laundry business was purchased from the Bartolis in the name of the corporation for $30,395. $15,577.86 was paid in cash by the use of the $15,000 paid in by the Somersets and from a loan made by them to the corporation. $4,854.33 was paid by the assumption by the corporation of the payment of a balance due under a conditional sale agreement on a

part of the equipment purchased, and the balance of the purchase price by a note purporting to be of the corporation of approximately $11,000 secured by a chattel mortgage. Thereafter the business which had been so purchased was "ostensibly run by the corporation." From the beginning the business required working capital. This was furnished by Somerset who by January 17, 1949, had advanced $5,053.20. On that date he executed a note of the corporation for that amount payable to him and his wife secured by a chattel mortgage on the property of the corporation subject to the Bartoli mortgage. There was no formal vote authorizing the execution of the note and mortgage but it was informally sanctioned by the stockholders. The corporation was "financially embarrassed" at the time and was "unable to meet its current expenses but was not insolvent." "Somerset was hopeful that during the spring it would overcome its financial difficulty." From January 17, 1949, to September 9, 1949, he advanced additional sums totaling $12,881.86. "By this time it had become apparent that the future of the company was hopeless and Somerset decided not to send more good money after bad money, decided to foreclose the mortgage, wipe out the corporate entity, and salvage what he could for himself." The mortgage was foreclosed on September 9, 1949, and Somerset and his wife "became the purchasers for $5,000." Thereafter the business was run by Somerset until October "during which time he sunk $528.98 more into the business." The Bartoli mortgage was foreclosed on November 22, 1949. The sale "brought in" $6,400, a surplus of $1,400 over what was owed on the mortgage. The surplus was paid to Somerset. From "the very beginning . . . Somerset's attitude toward the business was as though it was his personal business." His wife was "only a nominal party." During March, 1949, he received $841.55 of corporate income which was not deposited in the corporate bank account because of fear of attachment. The corporation was adjudicated bankrupt on December 5, 1949. Somerset has advanced to the corporation a total of $18,835.88, which, in his counterclaim,

he seeks to recover or to have credited on the claim of the trustee against him.

The judge's general findings from the facts hereinbefore recited were "that the mortgage to the Somersets was in fraud of creditors but that they are not liable for the amount they bid at the foreclosure sale as the mortgage was wiped out by the legitimate foreclosure of the prior Bartoli mortgage; . . . that the creditors were not prejudiced by the Somerset mortgage because the business was operated in the same manner during the existence of the mortgage and after its foreclosure as it would have been run if the mortgage had never been given; . . . that the creditors were not wronged by the fact that the corporation was organized with inadequate capital and could not function except upon borrowed money; . . . that because Joseph B. Somerset entirely controlled the affairs of the corporation, and controlled all the stock, it would be inequitable for him to gain a preference over the other creditors of the corporation in the distribution of its assets; . . . therefore . . . he is not entitled to set off the $1,400 and the $841.55 against what the corporation owes him; . . . [and] that . . . [he] is liable in the sum of $2,241.55 with interest from the date that the corporation was adjudicated a bankrupt."

The final decree provided that: "(1) The bill be dismissed as against the defendants Samuel Potish and Sadie T. Somerset, and Dart Cleansers, Inc. (2) The defendant Joseph B. Somerset pay to the plaintiff the sum of $2,241.55 together with interest at 6% from December 5, 1949. (3) The counterclaim by the plaintiff in set-off, Joseph B. Somerset, is established in the sum of $18,835.38 [sic]; said counterclaim is not to be enforced against the plaintiff trustee, Samuel Rosen, or to be operative beyond such value as the bankruptcy act attributes to it as evidence of the amount due as a provable claim in bankruptcy and that execution on said judgment be perpetually stayed; the plaintiff in set-off has no right of set-off of this claim against the sum to be paid by him under paragraph (2) supra."

The plaintiff appealed from this decree except as to the

dismissal of the bill against Dart Cleansers, Inc. Because of his failure to argue he has waived his appeal so far as it concerns Potish.

It was admitted at the oral argument that following the entry of the decree and before the filing of the claim of appeal Somerset paid to the plaintiff the sum of $2,241.55 with interest as prescribed in the decree.

There is no merit in the plaintiff's contention that Somerset and his wife owe a balance of $6,000 to the corporation on their subscription to the 210 shares of stock which were issued to him and his wife. It is clear that the certificate of incorporation authorized the establishment of a corporation with 500 shares of stock of no par value and not one with 500 shares of $100 par value. The Somersets paid a "fair and reasonable price" for the stock issued to them and they owe the corporation nothing on their subscription.

The other contention of the plaintiff is that the decree should have ordered Somerset and his wife to pay the amount of $5,000 for which the property of the corporation was sold on the foreclosure of their chattel mortgage. Neither of the Somersets has appealed from the final decree and they cannot question the correctness of the judge's finding that the chattel mortgage to them was in fraud of creditors. Their liability to the trustee in bankruptcy respecting the property which they acquired on the foreclosure of their fraudulent mortgage is governed by the principles recently stated in *Welsch* v. *Palumbo*, 321 Mass. 399, where the facts were substantially the same as here except that the court was dealing with a preference instead of a fraudulent conveyance. They are unable, because of the foreclosure of the first mortgage, to return to the trustee the specific property which they received from the corporation. They must, therefore, account for its fair market value, determined as of the time they foreclosed their second mortgage. *Hubbell* v. *Currier*, 10 Allen, 333, 337. *Walworth Co.* v. *Locke Stevens & Sanitas, Inc.* 300 Mass. 557, 559. *Perkins* v. *Becker's Conservatories, Inc.* 318 Mass. 407, 412. Such value was the value of the equity in the property subject to the first mortgage. Although not

described in the judge's findings, the property apparently consisted of all the chattels employed by the corporation in the conduct of its business. When acquired by the Somersets it had not been removed from the corporate premises and thereafter was used by Somerset in the same location. Its market value was its value so located. *Welsch* v. *Palumbo, supra,* page 404. The judge made no finding as to value. We do not construe his order that Somerset pay to the trustee the $1,400 which was received as surplus on the foreclosure of the first mortgage as an implied finding that $1,400 was the value of the equity in the property at the time of the sale under the second mortgage. This value was not necessarily shown by what was paid for it by Somerset and his wife in the form of a credit to the corporation on its indebtedness to Somerset or by the amount of the surplus received on the foreclosure sale under the first mortgage two or three months later. The order of payment in the final decree appears to have been based upon the amount by which Somerset has benefited rather than upon the amount by which the assets of the corporation have been depleted.

As the report of material facts is not sufficient for us properly to adjudicate the subject matter here involved, we retain the case and direct the judge to make a further report as to the value of the corporation's property at the time it was acquired by the Somersets. G. L. (Ter. Ed.) c. 231, § 125A, inserted by St. 1949, c. 171, § 1. *Murphy* v. *Killmurray,* 324 Mass. 707.

*So ordered.*